# THORNTON-THOMAS MERCANTILE COMPANY, RESPONDENT, *v.* BRETHERTON ET AL., APPELLANTS.

## (No. 2,029.)

(Submitted December 15, 1904. Decided February 23, 1905.)

*Receivers—Wrongful Receivership—Actions for Damages— Executors—Survival of Action—Measure of Damages—Evidence—Loss of Accounts—Presumptions—Instructions— Appeal—Harmless Error—Reviewable Objections—Actions—Survivorship.*

Wrongful Procurement of Receiver—Executors—Survival of Action.
1. Under Code of Civil Procedure, section 2733, a cause of action for damages for wrongfully procuring the appointment of a receiver survives against the executor of the decedent wrongdoer.

Evidence—Objections—Supreme Court—Appeal.
2. An objection to the admission of evidence raised for the first time in the supreme court will not be considered.

Receivers—Wrongful Appointment—Evidence—Supreme Court Opinion.
3. In an action for damages for wrongfully procuring the appointment of a receiver for a going and solvent corporation, where the theory of the trial was that plaintiff could not recover without showing malice or want of probable cause, it was proper to admit as introductory evidence the opinion of the supreme court in the receivership proceedings, reversing the order appointing the receiver, though the invalidity of the appointment was admitted by the defendants.

Documentary Evidence—Admissibility.
4. An objection to a series of documents as a whole is not well taken if some of them are admissible.

Evidence—Admissibility—Pleadings—Harmless Error.
5. The admission of evidence in proof of matters admitted by the pleadings is not reversible error.

Evidence—Corporations—Books—Appeal.
6. Where the books and papers of a corporation were admitted in evidence without objection, it cannot be claimed on appeal that the admission of one of such papers constituted error.

Offer of Proof—Rejection—Appeal.
7. The rejection of an offer of proof will not be reviewed on appeal where the party making the offer did not state and have placed on the record what he intended to prove.

Receivers—Wrongful Appointment—Evidence—Damages—Accounts.
8. In an action for damages for wrongfully procuring the appointment of a receiver for a going and solvent corporation, plaintiff may show as an item of damage the amount of a good and collectible account which was lost by reason of the receivership.

Receivers—Wrongful Appointment—Evidence—Damages—Accounts.
9. In an action for damages for wrongfully procuring the appointment of a receiver for a going and solvent corporation, evidence of the loss of an account through the receivership and the statute of limitations, is admissible, although no trial of the question in the courts had been had.

Receivers—Wrongful Appointment—Liability for Damages.
10. Persons who wrongfully procure the appointment of a receiver for a going and solvent corporation become, after the appointment is judicially declared void, trespassers *ab initio,* and liable for the damages caused by their wrongful acts.

Receivers—Wrongful Appointment—Damages—Pleadings.
11. In an action for damages caused by the wrongful appointment of a receiver for a going and solvent corporation, where plaintiff did not claim either interest, prospective profits, or exemplary damages, allegations of the complaint concerning the extent of the business of the company, and the conduct of defendants tending to show fraud, oppression, or malice, must be treated as surplusage.

Receivers—Wrongful Appointment—Measure of Damages—Presumptions.
12. The measure of damages for wrongfully procuring the appointment of a receiver for a going and solvent corporation is, under Civil Code, sections 4270, 4330, 4333, and 4334, the amount which will afford compensation for the detriment proximately caused by defendants' wrongful act, which, in case of the wrongful conversion of personal property, is presumed to be the value of the property at the time of conversion, with interest from that time, or the highest market value of the property at any time between the conversion and the verdict, without interest, and a fair compensation for the time and money properly expended in pursuit of the property.

Receivers—Wrongful Appointment—Malice—Probable Cause—Evidence.
13. It is not necessary, in order to recover damages for wrongfully procuring the appointment of a receiver for a going and solvent corporation, to show that the appointment was procured maliciously, and without probable cause.

Conversion—Measure of Damages—Election.
14. Under Civil Code, section 4333, providing for two measures of damages for the wrongful conversion of personal property, the party

injured must elect under which of these two options he will claim, and he may not be permitted to rely upon both in the same case.

Conversion—Measure of Damages—Election—Instructions.

15. Where a party in his complaint and by his evidence seeks to recover damages for the wrongful conversion of personal property under one of two measures granted by the statute, an instruction authorizing the assessment of damages according to the other standard is erroneous.

Instructions—Pleadings—Evidence.

16. Instructions must be warranted by the pleadings and evidence.

Conversion—Conflicting Instructions—Measure of Damages—Harmless Error.

17. The giving of instructions authorizing the jury to award damages for the wrongful conversion of personal property under both the measures provided for under Civil Code, section 4333, only one of which options could be taken advantage of by the injured party, was harmless error, where there was no evidence warranting the assessment of damages in accordance with one of the standards, and there was no claim that the amount of the verdict was excessive, or that the evidence was insufficient to justify the verdict.

Presumptions—Accounts.

18. Under Code of Civil Procedure, section 3266, subsection 32, providing that it is presumed that a thing once proved to exist continues to exist as long as is usual with things of that nature, accounts which are shown to have once been good and collectible are presumed to so continue.

Receivers—Wrongful Appointment—Measure of Damages—Attachment.

19. The fact that accounts and bills belonging to a corporation, which were not collected owing to the wrongful institution of receivership proceedings by defendants, were taken possession of by an attachment to satisfy an indebtedness of the corporation, does not affect the measure of the corporation's damages for the wrongful receivership.

Instructions—Names of Attorneys Subscribed—Harmless Error.

20. The giving of instructions bearing the names of the attorneys of the parties, while not a commendable practice, is not reversible error.

*Appeal from District Court, Silver Bow County; E. W. Harney, Judge.*

Action by the Thornton-Thomas Mercantile Company against George P. Bretherton and another. From a judgment for plaintiff and an order denying them a new trial, defendants appeal.. Affirmed.

*Mr. E. B. Howell* and *Mr. E. De Steiguer,* for Appellants.

The action did not survive against the estate. The various provisions of the code upon this question must be construed together, and, if possible, in such manner as to give to each some effect, and its due effect. If the construction contended for by plaintiff is correct, then sections 2731 and 2733, Code

of Civil Procedure, have no force and effect whatever.   If the legislature had already provided by section 587 of the same Code that all causes of action survive, and may be maintained for and against the representatives of deceased persons, then the legislature would have done a useless thing to enact sections 2731 and 2733, providing that certain specified classes of actions could be so maintained for or against executors and administrators.   If it had been the intent of the legislature to enact such a sweeping provision that all actions of whatsoever nature could be had against representatives of deceased persons —a provision more sweeping, we contend, than is contained in the laws of any other state—then the legislature would certainly have included such amendment in that part of the code where it was peculiarly applicable, to wit, that part relating to the estates of deceased persons, and would have accomplished the purpose designed by including the provisions in sections 2731 and 2733.

This construction of the three sections in question is amply sustained by the decisions of the courts upon similar provisions of statutes of other states.   (*Martin* v. *Baltimore & Ohio R. R.,* 151 U. S. 673, 691-703, 14 Sup. Ct. 533; *Slauson* v. *Schwabacher,* 4 Wash. 783, 31 Am. St. Rep. 948, 31 Pac. 329, 331; *Lane* v. *Frawley,* 102 Wis. 373, 78 N. W. 593.)   This action must be regarded as an action for malicious prosecution, though special damage in the way of injury to plaintiff's property is alleged.   (*Noonan* v. *Orton,* 34 Wis. 259, 17 Am. Rep. 441; *Sharp* v. *Miller,* 54 Cal. 329; *Stricker* v. *Pennsylvania Ry. Co.,* 60 N. J. L. 230, 37 Atl. 776.)   Under statutes such as that of Montana, an action for malicious prosecution does not survive. (*Noonan* v. *Orton,* 34 Wis. 259, 17 Am. Rep. 441; *Conly* v. *Conly,* 121 Mass. 550; *Cummings* v. *Bird,* 115 Mass. 346.)

It may be contended that the wrongful acts alleged in the complaint resulted in loss to the property or estate of the plaintiff, and that therefore the cause of action thereby resulting survived.   As pointed out in *Noonan* v. *Orton, supra,* at page 263, it is not sufficient that the effect of the wrong complained of diminished the estate of the plaintiff, for such result may follow any personal injury; but the test is, what was the nature

of the wrong committed?  In this case the wrongful act complained of was the illegal appointment of a receiver.  What was done thereafter was not done by the plaintiffs, but by the receiver.  By the statute of 4 Edward III, enacted about the year 1330, executors were given a remedy for trespass to the personal estate of their testators, which remedy was extended by construction to administrators.  (*Noonan* v. *Orton, supra,* p. 265.)  Disregarding that part of the Montana statute which refers to trespass upon real estate (which is not applicable to this action), the words of the English statute, "a trespass to the personal estate," are as comprehensive as the language of section 2733, providing that an action may be maintained against the representative of one who "has wasted, destroyed, taken or carried away, or converted to his own use the goods or chattels" of a deceased person.  It certainly cannot be contended that under the English statute referred to causes of action arising from personal wrongs survived, even though they may have resulted in damage to the estate.

That the opinion of an appellate court cannot be used as evidence has been held in a number of cases and for a number of reasons.  (*Appeal of Buckingham,* 60 Conn. 143, 22 Atl. 511; *Robinson* v. *New York etc. Ry. Co.,* 64 Hun, 41, 18 N. Y. Supp. 728; *Gage* v. *Bussey,* 7 Ill. App. 435.)

Instruction No. 13 is erroneous because it leaves to the jury to find damages both speculative and remote.  (*Bradley* v. *Fuller,* 118 Mass. 239; *Savings Bank* v. *Asbury,* 117 Cal. 96, 48 Pac. 1081.)

It is inconsistent in itself in that it instructs the jury that accounts once shown to be good and collectible are presumed to continue so, but permits them to infer that the same became bad and uncollectible by reason of the appointment of a receiver.

It is erroneous in that it applies the presumption of continuance to a matter to which that assumption is not applicable. The fact alone that an account or a note is long overdue is evidence which the jury is entitled to consider as tending to show that it is no longer collectible.

Whatever money had been realized by the sheriff and remained in his hands either to be applied upon the judgments against the company, or to be returned to the company in case such judgments were fully satisfied, was held by him as much for the benefit of the company as if it had been actually credited upon the judgment and the amount so held by the sheriff should therefore have been deducted from the value of the goods.   (*Kaley* v. *Shed,* 10 Met. 317, 319; *Ball* v. *Liney,* 48 N. Y. 6, 14, 8 Am. Rep. 511; *Roberts* v. *Stuyvesant S. D. Co.,* 123 N. Y. 57, 67, 20 Am. St. Rep. 718, 25 N. E. 294; 26 Am. & Eng. Ency. of Law, 1st ed., 855; *Pierce* v. *Benjamin,* 14 Pick. 356, 361, 25 Am. Dec. 396.)

*Mr. John J. McHatton* and *Mr. George F. Shelton,* for Respondent.

The appellants are confined to the objections urged in the court below.   A party cannot abandon the ground of his objection taken to the evidence on the trial below and assume another and different ground on the trial of an appeal in the supreme court.   (*Fisk* v. *Cuthbert,* 2 Mont. 599; *Clark* v. *Huber,* 25 Cal. 593; *Stoddard* v. *Treadwell,* 29 Cal. 282; *Le Mesnager* v. *Hamilton,* 101 Cal. 532, 40 Am. St. Rep. 81, 35 Pac. 1054; *People* v. *McCauley,* 45 Cal. 146; *People* v. *Manning,* 48 Cal. 338; *Brumley* v. *Flint,* 87 Cal. 471, 25 Pac. 683; *Bennett* v. *Green,* 74 Cal. 425, 16 Pac. 231; *Cochran* v. *O'Keefe,* 34 Cal. 558; *Crocker* v. *Carpenter,* 98 Cal. 432, 33 Pac. 271; *Lee* v. *Murphy,* 119 Cal. 367, 51 Pac. 549, 955; *Martin* v. *Travers,* 12 Cal. 243.)

The opinion of the supreme court constituted in effect a finding of facts upon the record and the conclusion of law applicable thereto, and that, with the certified copy of the order of court annulling the proceedings in the court below relating to the appointment of a receiver, constituted the judgment of the court.   If a judicial record is admissible in evidence for any purpose, all of its parts are admissible, though some are immaterial or incompetent.   (*Swope* v. *Paul,* 4 Ind. App. 463, 31 N. E. 42; *Cretin* v. *Levy,* 37 La. Ann. 182; *Granger* v. *Warrington,* 8 Ill. 299.)

The objection to the whole of a document offered in evidence, where a part thereof is properly admissible, upon the ground that the entire document is incompetent, irrelevant and immaterial, is not well taken if some of the papers included are admissible. (*Cobeny* v. *Hale,* 49 Cal. 552; *Board of Education* v. *Keenan,* 55 Cal. 645-648; *Shatto* v. *Crocker,* 87 Cal. 631, 25 Pac. 921; *Harris* v. *Zanone,* 93 Cal. 71, 28 Pac. 845; *Woolbridge* v. *Boardman,* 115 Cal. 74, 46 Pac. 868.)

Reversible error cannot be predicated upon the admission of evidence of testimony to prove a fact admitted in the pleadings. (*Wells* v. *McPike,* 21 Cal. 215; *West Coast Lumber Co.* v. *Newkirk,* 80 Cal. 275, 22 Pac. 231; *School District* v. *McComb,* 18 Colo. 240; *Pfantz* v. *Culver,* 13 Iowa, 312; *Tucker* v. *Wilkins,* 105 N. C. 272, 11 S. E. 575; *Fitzgerald* v. *School District,* 5 Wash. 112, 31 Pac. 427.)

Accounts which appear upon the books are presumed to be good accounts until the contrary is shown. (Abbott's Trial Brief on the Facts, 616; *Thompson* v. *Hall,* 45 Barb. 214; *Hard* v. *Brown,* 18 Vt. 87.)

The true test in determining whether an action survives or not is whether the injury on which the cause of action is based affects property rights, or affects the person only. In the former case, the cause of action survives; in the latter, it abates. *Assumpsit* will lie against executors on evidence that the testator in his lifetime cut and carried away timbers from the premises of plaintiff without his permission. (*Cooper* v. *Crane,* 9 N. J. L. 173.) In Dakota a cause of action for taking property of the plaintiff by the sheriff was held to survive. (*O'Neill* v. *Murray,* 6 Dak. 107, 50 N. W. 619.) In South Carolina the rule is laid down that when the injury is to the estate, the action survives. (*Nettles* v. *Doyley,* 2 Bro. 27.) A cause of action for damages to real or personal property survives the death of the trespasser, and may be prosecuted against his executor or administrator. (*Cotter* v. *Plumber,* 72 Wis. 476, 40 N. W. 379.)

In 21 Encyclopedia of Pleading and Practice, the rule is laid down where, by statute, an action survives against the personal representative of the defendant, it must be considered as sur-

viving in favor of the personal representative of the plaintiff. Even though there is no express provision to that effect, the right of survivorship is mutual.

Under this principle, therefore, the provision of the Code (Code of Civil Procedure, section 587), that an action or cause of action or defense shall not abate by the death of a party, being mutual, the cause of action would survive necessarily against the personal representative of a deceased wrongdoer. The same principle as to survivorship as to a cause of action for injury to property is upheld in *Teneyck* v. *Renk,* 31 N. J. L. 425; *Pierson* v. *Morgan,* 52 Hun, 611, 4 N. Y. Supp. 898; *Bond* v. *Smith,* 4 Hun, 48; *Ferrell* v. *Money,* 33 Tex. 219; *Clark* v. *Kinan,* 28 N. C. 308; *Weare* v. *Burge,* 32 N. C. 169 (10 Ire.); *Davis* v. *Railroad Co.,* 25 Fed. 786; *Final* v. *Backus,* 18 Mich. 218; *Grant* v. *Smith,* 20 Mich. 201.

The principle maintained is that where the action injures the estate of the plaintiff, or a benefit accrues to the estate of the wrongdoer, the action survives.

· MR. COMMISSIONER BLAKE prepared the opinion for the court:

This action was commenced to recover damages in the sum of $22,050 for the wrongful acts of defendant Bretherton and one John D. Thomas in his lifetime in procuring in a certain suit in the district court of the county of Silver Bow the appointment of a receiver of the business and property of the Thornton-Thomas Mercantile Company (hereafter referred to as the "company"), and causing the loss of its accounts and merchandise.

The plaintiff was organized as a corporation in 1890 under the laws of this state for the purpose of carrying on a general mercantile and grocery business in Butte, and was engaged therein until the receiver assumed possession of its business and property. On or about October 6, 1897, said John D. Thomas and Bretherton commenced an action in said district court against the company, and asked for the appointment of a receiver to take possession of its business and property, and

obtained an order from said court appointing E. H. Hubbard. This order was dated October 6, 1897, and authorized and directed said Hubbard, as receiver, to enter into the possession and take and hold all the property, real, personal and mixed, of the company, and take and receive all rents, issues and profits thereof, with the right to sue and recover all sums, property, or interests due said company. The order was served October 7, 1897, upon J. A. Fraser, the president of the company, and said Hubbard as receiver immediately entered upon the discharge of his duties. The company applied to this court for a writ of *certiorari,* and such proceedings were had that it was adjudged that said order appointing said receiver was void, that said district court had no jurisdiction or authority to make such appointment, and all orders of said court made subsequent thereto were vacated. (20 Mont. 284, 50 Pac. 852.) The company did not resume business, and never regained possession of its property, stock of goods, accounts, and bills receivable. John D. Thomas died in 1898, and left a last will and testament naming defendant Mattie A. Thomas as executrix. In June, 1898, the will was duly admitted to probate by said district court, and letters testamentary were issued to said Mattie A. Thomas, who qualified as required by law, and ever since has been acting as said executrix.

The issues presented in the pleadings appear in the following summary: The complaint alleges that at the time said receiver was appointed the company was carrying on a large business with profit, and was solvent; that the value of its stock of goods and property used in its business was $7,800; that its accounts and bills receivable amounted to the sum of $15,000; that the costs and expenses incurred in and about said writ of *certiorari* to protect its rights were $1,050, and that all its profits, assets, and credits were lost except the sum of $1,500. The answer denies that the company, at the times mentioned in the complaint, was solvent, or carrying on a large business with profit, but avers that at the time of the appointment of said receiver said company was insolvent, and conducting its business at a loss; denies that said stock was of any greater value than $3,213.39; denies that its accounts and bills

receivable were good to any greater amount than $1,000, and says that the balance thereof could not be collected; and denies that said company was compelled to expend any sum in procuring the annulment of said order appointing said receiver. The answer further says that the president and manager, John A. Fraser, collected the accounts after the receiver was appointed, and that the company at this time was indebted to W. A. Clark & Brother and others in the sum of $9,056.13, and was unable to pay more than one-half thereof. There are allegations in the complaint to the effect that John D. Thomas and Bretherton maliciously and without sufficient cause commenced said action and procured said order to be made for the appointment of a receiver, and directed said Hubbard to commit the acts whereby said business of the company was destroyed, and its property, goods, accounts and bills receivable were lost. The answer denies these allegations, or that said company was injured through the acts of John D. Thomas, or Bretherton, or the receiver. It does not appear that the receiver made any report of his acts during his possession of the property and business of the plaintiff. There was a trial by the court with a jury, and a verdict was returned for plaintiff for the sum of $10,000, and judgment was entered thereon. The defendants gave notice of their intention to move for a new trial upon the following ground: "Errors in law occurring at the trial and excepted to by the defendants." The defendants appealed from the judgment and order overruling their motion for a new trial.

It is the contention of appellants that the right of action, so far as it relates to Mattie A. Thomas as executrix, abated with the death of John D. Thomas, and that the maxim of the common law, "A personal right of action dies with the person," has not been modified by the statute. Section 2733 of the Code of Civil Procedure is as follows: "Any person or his personal representative may maintain an action against the executor or administrator of any testator or intestate who in his lifetime has wasted, destroyed, taken or carried away, or converted to his own use, the goods or chattels of any such person, or committed any trespass on the real estate of such

person." The courts have not been uniform in the interpretation of laws of this nature, but we have arrived at a satisfactory conclusion. The section *supra* was enacted in 1895, and is the same as section 1584 of the Code of Civil Procedure of California.

The case of *Coleman* v. *Woodworth,* 28 Cal. 568, was decided in 1865, and the statement of facts is as follows: "Charles Doane was sheriff of the city and county of San Francisco, and as such, an execution on a judgment in favor of N. C. Lane and against Harvey Dickinson was placed in his hands. By virtue of the execution, Doane seized personal property claimed by plaintiffs, and they brought an action against him for the wrongful taking and conversion of the same. Pending the action Doane died, and plaintiff's attorneys suggested his death, and moved that his administrators be substituted as defendants in the action. The court granted the motion, defendants' counsel excepting." Chief Justice Sanderson, for the court, said: "The first point made by counsel for appellants, to the effect that the cause of action set forth in the complaint does not survive against the personal representative of the defendant's intestate, is answered by the one hundred and ninety-seventh section of the Act to regulate the settlement of the estates of deceased persons, which provides that." The statute quoted in the opinion is identical with the section *supra.* The court approves *Coleman* v. *Woodworth, supra,* in *Fox* v. *Hale & N. S. M. Co.,* 108 Cal. 483, 41 Pac. 330, and says: "The right of the plaintiff to 'maintain' the action against the executors of Hobart is fully authorized by section 1584 of the Code of Civil Procedure." The supreme court of Utah followed these authorities, and said, "It has been held likewise in California under a statute like ours." (*Warren* v. *Robinson,* 21 Utah, 445, 61 Pac. 30.) We accept this construction of our statute which has so long prevailed in California, and affirm the ruling of the court below that this action can be maintained against Mattie A. Thomas as the executrix of John D. Thomas.

On the trial the plaintiff (respondent) offered in evidence without objection the following papers in the files of the case of John D. Thomas and Bretherton against the company,

wherein the receiver was appointed, to wit, the complaint, amended complaint, second amended complaint, order appointing the receiver, return of the sheriff showing service of the order, petition of the receiver for order of sale of the property of the company, the order of sale upon the petition, summons, the order to the receiver to stay proceedings upon the order of sale, the return of the sheriff showing service of the order appointing the receiver upon J. A. Fraser as president of the company, and the revocation of the appointment of the receiver, and also the *remittitur* of the supreme court in the proceedings for a writ of *certiorari.* Counsel for plaintiff offered in evidence "a certified copy of the supreme court records, under the hand of the clerk of the supreme court and under the seal of the court, in cause No. 1,167, in the case of the *State of Montana ex rel. The * * * Company and John A. Fraser* v. *The District Court of the Second Judicial District of the State of Montana in and for the County of Silver Bow, and William Clancy, Judge thereof,* Respondents." The records consist of the writ of *certiorari,* return to the writ, and opinion of the supreme court. When this offer was made counsel for defendants said: "We object to this. The only allegation in the complaint in regard to this is that the supreme court declared the order appointing a receiver void. We admit that, and I do not see how this is pertinent. We therefore object to it as being incompetent, irrelevant and immaterial." Thereupon the court said: "Let the record show that upon the statement of counsel for defendants that their contention is that the plaintiff is not entitled to recover in this action without showing malice or want of probable cause in the bringing of the action in which the receiver was appointed, for that reason the court will admit the evidence offered."

It is contended that the court erred in overruling this objection and in allowing the opinion of the supreme court to be admitted in evidence, on the ground that the same forms no part of the records, and cannot be evidence to prove any fact, and on the further ground that the counsel in the receivership case and the judge appointing the receiver are censured therein in severe terms, and that such comments of the highest tribunal

in the state must be prejudicial to appellants. The opinion is not specified in the above objection, and there has been a complete change of front in the position of appellants. The introduction of this evidence in the court below was resisted upon the ground that defendants admitted the allegation of the complaint that the supreme court declared void the order appointing the receiver, and that this record was not pertinent, and therefore was incompetent, irrelevant and immaterial.

The official character of these records is established by the statute and rule of this court: "A copy of the judgment, signed by the clerk, entered upon or attached to the writ and return, constitute the judgment-roll." (Section 1950, Code of Civil Procedure.) "A copy of the opinion will accompany the *remittitur* when the judgment or order of the trial court is reversed or modified and the case remanded for further proceedings other than the entry of a final judgment or order determining the proceedings in the trial court." (Rule 19, Supreme Court, 57 Pac. viii.) This court has held repeatedly that a party complaining of error must stand or fall upon the ground relied on in the trial court. (*Fisk* v. *Cuthbert,* 2 Mont. 593; *Rutherford* v. *Talent,* 6 Mont. 132, 9 Pac. 821; *Brand* v. *Servoss,* 11 Mont. 86, 27 Pac. 407; *State* v. *Black,* 15 Mont. 143, 38 Pac. 674, and cases cited.) The court below did not have its attention called to the objections which are urged for the first time in this court. The appellants deem the reason of the court for the admission of this evidence "wholly insufficient." This was substantially that defendants contend that plaintiff was not entitled to recover without showing malice or want of probable cause in bringing the action for the appointment of the receiver, and the appellants adhere to the theory in this court. At this point in the trial no oral testimony had been offered, and the evidence comprising the above-named records was introductory. It is apparent that both parties were then of the opinion that the plaintiff must prove malice or want of probable cause in the commencement of the receivership case, and the ruling was correct.

Irrespective of this view, the exception should be further examined. We have enumerated the papers which were received

in evidence without objection, and the writ of *certiorari* was
an essential part of the records, and constituted with said re-
turn and opinion "Plaintiffs' Exhibit 11." The objection to a
series of documents as a whole is not well taken if some of them
are admissible. (*Board of Education* v. *Keenan,* 55 Cal. 642;
*Shatto* v. *Crocker,* 87 Cal. 629, 25 Pac. 921. See, also, *Far-
leigh* v. *Kelley,* 28 Mont. 421, 72 Pac. 756; *Yoder* v. *Reynolds,*
28 Mont. 183, 72 Pac. 417; *Bair* v. *Struck,* 29 Mont. 45, 74
Pac. 69.) The judgment will not be reversed if the court per-
mits testimony to be offered on matters that are admitted in the
pleadings. (*Wells* v. *McPike,* 21 Cal. 216; *West Coast Lum-
ber Co.* v. *Newkirk,* 80 Cal. 275, 22 Pac. 231.) No instruc-
tion was requested by defendants defining the effect of this opin-
ion as evidence. Our conclusion is that the court did not err
in allowing said records to be admitted.

Three exceptions were saved to the ruling of the court re-
garding a so-called "blacklist" embracing accounts of custom-
ers due to plaintiff, in arrears, but not necessarily bad. The
bookkeeper of the company prepared reports of such accounts
for the Grocers' Protective Association. The questions in-
volved in these rulings are settled by the following paragraph
of the bill of exceptions: "Said original blacklist, so called, was
then and there present in court among the books and papers
identified by witness Fraser as the books and papers of the com-
pany, and was offered and admitted in evidence by the court
without objection at the same time that said other books and
papers were offered and admitted, and said original blacklist,
of which exhibit 'H' purported to be a partial copy, was then
and there before the court and jury."

Witness Lutey testified that he was talking to Fraser about
the grocery business, and an objection was sustained to what
Fraser had said as incompetent and not binding upon the plain-
tiff. The transcript does not throw any light upon this ex-
ception. The appellants did not make any offer of proof of the
conversation between Fraser and the witness, or that anything
was said while Fraser was acting as the agent of the company,
within the scope of his authority.

In *Randall* v. *Greenhood*, 3 Mont. 506, the court said: "The purpose of the inquiry is not disclosed in the record. We have no means of knowing what the appellants proposed to prove by making the inquiry. The answer to the question might have been competent, or it might not. The appellants ought to have stated and placed in the record what they proposed to prove."

D. P. O'Connor, an expert bookkeeper, testified: "I find upon the books of the * * * company the account of Mrs. L. A. Thornton." The following question was then put to the witness: "You may state what the amount of that account was." The defendants interposed an objection that this was "incompetent, irrelevant and immaterial." After an explanation had been made to the court of the object of the testimony, counsel for defendants said: "Objected to further for the reason that the element of damages which he is attempting to prove is not a proper element of damages to be considered by the jury, and is too remote, and the evidence is speculative, and is incompetent, irrelevant and immaterial." Counsel for plaintiff then said: "We will show that this lady (Mrs. Thornton) was perfectly solvent, and that the amount of this account, $3,069, was collectible, and was perfectly good, and that by reason of the appointment of this receiver the account was lost." The court then ruled: "If the conditions are as you say, that it was collectible, you may show that." The witness answered: "Yes, I have such an account. The account is $3,069.65, Mrs. L. A. Thornton." There is no dispute about the amount of this indebtedness, and under the offer of proof the objections to the testimony were without merit.

James W. Forbis testified in chief that said account of Mrs. Thornton was good and collectible in October, 1897. On cross-examination the witness testified, "I have acted as the attorney for Mrs. Thornton. Question by defendants: Have you not made an arrangement, either with the officers or the attorneys of W. A. Clark & Brother, that, if the account of Mrs. Thornton can be proved, so that it is shown that that amount is owing by her, that she would still pay the judgment, and not claim the statute of limitations? Answer: There is absolutely

no such an agreement; never was.   On the contrary, W. A. Clark & Brother have been trying to collect said bill and was [sic] beaten on the claim of the statute of limitations.   Question by defendants: Has there ever been a trial on that?   Answer: No, sir.   Counsel for defendatns: I move to strike out the testimony of the witness on this point as incompetent, irrelevant and immaterial.   The Court: It was brought out on cross-examination.   I will overrule the objection."   It is apparent that appellants sought to prove that an arrangement had been made under which Mrs. Thornton would "not claim the statute of limitation."   The witness, however, testified that Mrs. Thornton beat W. A. Clark & Brother "by the claim of the statute."   The bare fact that there had not been a trial in the courts did not affect the right of the debtor to avail herself of the protection of this statute by "bluff," according to counsel for appellants, or any other mode, and the motion to strike out the testimony on this point was justly refused.

In *Lockhart* v. *Gee,* 3 Tenn. Ch. 332, the complainant had a receiver appointed to take charge of all of certain property and collect the rents, but the supreme court of Tennessee decided that the appointment was illegal.   The chancellor said: "Having no right to a receiver, the complainant is, of course, liable to the defendants for all the consequences of having had one appointed."

In *Terrell* v. *Ingersoll,* 10 Lea, 77, the complainant obtained an injunction to restrain the defendants from receiving moneys on notes and accounts belonging to the partnership, and asked for the appointment of a receiver to take possession of and collect the assets.   The chancellor granted the prayer and appointed a receiver, and afterward dissolved the injunction, and ordered a reference to a master to hear proof and ascertain what damages, if any, had been sustained by the defendants by reason of the wrongful suing out of the injunction.   Judge Cooper, for the court, said: "The plaintiff in an action who wrongfully sues out a writ of injunction is liable for all the injury which proximately results from it, and must be held to active diligence in the conduct of all proceedings under it.   It is his duty to see that a receiver is appointed to take charge of

property and effects impounded by the writ, and to secure them by proper legal proceedings which his adversary is prevented by the writ from instituting. *Prima facie,* the complainant is liable for all losses occasioned by the neglect of the receiver to perform his duty, whether it be in realizing the asset, or in accounting for it after it is realized." This case was affirmed in *Downs* v. *Allen,* 10 Lea, 652.

In *O'Mahoney* v. *Belmont,* 62 N. Y. 133, the court said: "The appointment of the receiver in this action, and the subsequent proceedings had in regard to the same, was an invasion of the rights of the parties, calculated to waste and deplete the alleged fund, and not demanded by the nature of the action or the circumstances of the case. * * * It is sufficiently apparent that the entry of the order under the circumstances, by the attorney employed by and with the concurrence of the receiver, was an abuse of the proceedings, which cannot be disregarded, and for which he should be held responsible. It constituted him an intruder, and a trespasser upon the rights of the parties."

In *Day* v. *Bach,* 87 N. Y. 56, the court said: "The authorities seem to establish these propositions: 1. That a void writ or process furnishes no justification to a party, and he is liable to an action for what has been done under it at any time, and it is not necessary that it should be set aside before bringing the action. (*Brooks* v. *Hodgkinson,* 4 Hurl. & N. 712.) * * * Where, however, property has been taken, the party against whom the writ issued is entitled to restitution from the party who sued out the writ, of any property or money of the defendant in his hands."

In *Dynes* v. *Hoover,* 20 How. (U. S.) 65, 15 L. Ed. 838, the court said: "Such is the law in either case, in respect to the court, which acts without having jurisdiction over the subject matter; or which, having jurisdiction, disregards the rules of proceeding enjoined by the law for its exercise, so as to render the case *coram non judice.* * * * In both cases the law is, that an officer executing the process of a court which has acted without jurisdiction over the subject matter becomes a

trespasser, it being better for the peace of society, and its interests of every kind that the responsibility of determining whether the court has or has not jurisdiction should be upon the officer, than that a void writ should be executed."

Mr. Sutherland, in his work on Damages (third edition), says: "If a defendant is a trespasser from the beginning his defense wholly fails, and he is liable for the same sum in damages which he would be compelled to pay if he had gone on without any precept or pretense of authority and done all the acts proved upon him.   *   *   *   The facts and circumstances attending the trespass, as has already been stated, may always be proved, that the jury may understand its intrinsic character; to enable the plaintiffs to show aggravations and bad motive, and to enable the defendant to controvert these; but the defendant, if guilty of the trespass, is bound to make reparation for the actual injury.   Absence of bad motive and of all aggravations cannot relieve him from making full compensation for property taken, destroyed, or injured.   An admission of counsel on the trial of an action of trespass that the defendant acted without malice will preclude the plaintiff from claiming vindictive damages; and therefore evidence on the part of the defendant in the nature of justification of his tortious act is inadmissible by way of mitigation."   (Section 1107.)

Under the authorities, John D. Thomas, Bretherton, and the receiver were trespassers *ab initio,* and their acts particularly described in the complaint cannot be justified.   The plaintiff does not demand as damages interest, prospective profits, or exemplary damages, and the allegations of the complaint concerning the extent of the business of the company, or the conduct of said trespassers tending to show fraud, oppression, or malice, must be treated as surplusage.   The defendants did not plead any facts in mitigation of damages, and the jury were required to find the market value of said stock of goods, property used in said business, and accounts and bills receivable at the time said receiver took possession thereof, and also the costs and expenses incurred in the *certiorari* proceedings.

The measure of damages is defined by the provisions of the Civil Code:

"Sec. 4270. Every person who suffers detriment from the unlawful act or omission of another may recover from the person in fault, a compensation therefor in money, which is called damages."

"Sec. 4330. For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

"Sec. 4333. The detriment caused by the wrongful conversion of personal property is presumed to be: (1) The value of the property at the time of its conversion, with the interest from that time; or, where the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict, without interest, at the option of the injured party; and (2), a fair compensation for the time and money properly expended in pursuit of the property.

"Sec. 4334. The presumption declared by the last section cannot be repelled, in favor of one whose possession was wrongful from the beginning, by his subsequent application of the property to the benefit of the owner, without his consent."

The instructions given and refused are numerous, covering forty pages of the transcript, and will not be quoted fully. The first instruction is a prolix statement of all the issues set forth in the pleadings, regardless of their materiality, but the criticism of appellants that the court displayed therein partiality for the respondent is not well founded.

The third and fifth instructions are attacked because they ignore the questions of malice and want of probable cause. The appellants maintain that the plaintiff must prove the allegations of the complaint touching these matters in order to recover any sum as damages. According to our view of the law, these issues were rightfully eliminated from the consideration of the jury.

It is claimed that the instructions numbered 6 and 17, requested by plaintiff, are inconsistent and contradictory. The sixth instruction embodies sections of the Civil Code, *supra,*

and states that the damages suffered by plaintiff "is the market value of the property at the time of such seizure, or the highest market value of the property at any time between the conversion by said Hubbard and the verdict, less the sum which was returned to plaintiff after said seizure." In this connection we are called upon to read the following part of the seventeenth instruction: "The market value of the property at the time of the conversion by the receiver is the amount recoverable by the plaintiff, less any amount returned to it or applied to its benefit, * * * and you are instructed that the value of the goods is the reasonable market value of the same at the time and place when they were so unlawfully converted." The appellants are right in their contention that section 4333, Civil Code, gives to the injured party one of two options; but he must elect one, and cannot rely upon both in the same case. Under the evidence the seventeenth instruction is correct, and the court erred in declaring in the sixth instruction the measure of the damages to be "the highest market value of the property at any time between the conversion by said Hubbard and the verdict." There is no evidence to which this part of the sixth instruction could apply, and the allegations of the complaint do not permit the assessment of damages in accordance therewith. The instructions must be warranted by the pleadings and evidence. (*Yoder* v. *Reynolds,* 28 Mont. 195, 72 Pac. 417, and cases cited.)

Was this error prejudicial to the appellants? The decision of this court in *Robinson* v. *Mills,* 25 Mont. 391, 65 Pac. 114, is directly in point. There was a conflict in the instructions, and Mr. Chief Justice Brantly, for the court, said: "That the conflict exists is clear, and it is impossible to reconcile it; but it does not therefor follow that the defendant is entitled to a new trial. The rule is recognized by this court that, where the instructions are upon a material point, and are in conflict, a new trial will be granted, unless it also appears that the defendant has suffered no prejudice. (*State* v. *Rolla,* 21 Mont. 582, 55 Pac. 525; *Heilbronner* v. *Lloyd,* 17 Mont. 299, 42 Pac. 853.) If, however, the conflicting instructions are upon an immaterial point, and it is not reasonably apparent that the

jury have been misled, a new trial will not be granted." In *Chicago Co.* v. *Taylor Co.* (Kan.), 78 Pac. 808, the jury were erroneously instructed that the defendant would be entitled to credit for "the deepening of the well and its connection" with a plant, and the court said: "There is, however, no evidence in the record that any damages were claimed for deepening the well, and no proof was offered as to the cost of deepening the creamery well. Hence the verdict could not have been affected in any sum by the feature of the instruction to which objection is made." It should be remembered that the appellants have not moved for a new trial on the ground that the amount of the verdict is excessive, or that the evidence is insufficient to justify the verdict, and, in our opinion, the appellants could not have been injured.

There is no force in the argument of appellants relating to the sixteenth instruction, and we think the question of the responsibility of the receiver for the failure to collect the account from Mrs. Thornton was correctly submitted to the jury.

We are unable to perceive any inconsistency between the instruction numbered 1, given by the court of its own motion, and instruction numbered 13, given at the request of respondent. The said instruction numbered 1 recites the allegations of the complaint respecting the elements of the damages claimed in this action, and limits the respective amounts which can be recovered, making a total sum of $22,050. The thirteenth instruction is based upon the evidence with reference to the accounts in the books and the good or collectible notes of the company. The appellants contend that the following sentence in said thirteenth instruction is not law: "You are instructed that accounts having once been shown to be good and collectible are presumed to have continued so, and that the fact that the accounts appear upon the books of the company and are testified to have been good and collectible is evidence for your consideration of the value of those accounts." This presumption is recognized in the Code of Civil Procedure: "All other presumptions are satisfactory, if uncontradicted. They are denominated disputable presumptions, and may be controverted by other evidence. The following are of that kind: * * *

That a thing once proved to exist continues as long as is usual with things of that nature." (Section 3266, subsection 32.) Mr. Abbott, in his Trial Brief (second edition), page 433, says: "In the absence of evidence, solvency is presumed. Solvency or insolvency at a given time having been shown, it is presumed to continue within reasonable limits of time."

It is also asserted that the instruction does not inform the jury that some of said accounts and bills receivable were taken possession of under a writ of attachment in the suit of W. A. Clark & Brother against the company to satisfy its indebtedness. Section 4334, Civil Code, covers this objection.

The twenty-second instruction mentions the judgment-rolls in five actions commenced against the company, in which some of the property in the possession of the receiver was levied on under execution and sold, and tells the jury that defendants are entitled to credit for the proceeds of the sales which were applied upon the payment of said judgments. Under the circumstances surrounding this entire transaction, the instruction allowing these amounts to be applied in this manner was favorable to the defendants.

All the instructions requested by the parties bear the names of the respective attorneys, and this is claimed to be error prejudicial to the appellants. The question has been disposed of by this court. (*State* v. *McDonald,* 27 Mont. 230, 70 Pac. 724; *State* v. *Martin,* 29 Mont. 273, 74 Pac. 725.)

The instructions requested by the defendants and refused by the court, viewed as a whole, are contrary to the principles of law upheld in this opinion, and, if given, must have resulted in a verdict for the defendants upon every proposition.

All the exceptions presented in the transcript have been examined, and we do not find any error of law entitling the appellants to a new trial.

We recommend that the judgment and order appealed from be affirmed.

Per Curiam.—For the reasons stated in the foregoing opinion, the judgment and order are affirmed.

*Affirmed.*

Rehearing denied April 4, 1905.