## ST. JOHN, RESPONDENT, *v.* TAINTOR, APPELLANT.

### (No. 4,011.)

(Submitted May 3, 1919.  Decided June 20, 1919.)

[182 Pac. 129.]

*Malicious Prosecution—Trial—Theory of Case—Erroneous Instructions.*

1.  In an action for malicious prosecution in wrongfully suing out attachments and procuring a receivership, instructions upon the measure of damages for a wrongful conversion, at variance with the theory upon which the action had been instituted and tried and an issue not presented by the pleadings, was reversible error.

[As to right of action for malicious attachment, see note in 93 Am. St. Rep. 463.]

*Appeal from District Court, Rosebud County; A. C. Spencer, Judge.*

ACTION by C. C. St. John against C. M. Taintor.  From a judgment for plaintiff and denial of a new trial, defendant appeals.  Reversed, and new trial ordered.

*Mr. Geo. W. Farr, Mr. O. F. Goddard, Mr. D. P. B. Marshall* and *Messrs. Gunn, Rasch & Hall,* for Appellant, submitted an original brief and one in reply to that of Respondent; *Mr. M. S. Gunn* argued the cause orally.

The purpose of this action is to recover damages for the alleged wrongful receivership.  While the complaint alleges that the commencement of the action in which the receiver was appointed and the procurement of the appointment of the receiver were malicious and without probable cause, the theory of a malicious prosecution was abandoned at the trial and the case was submitted to the jury upon the theory that the receiver was a trespasser *ab initio* and that the only issue was with reference to damages.  The court, assuming to follow the decisions in the case of *Thornton-Thomas Co.* v. *Bretherton,* 32 Mont. 80, 80 Pac. 10, and in *Lyons* v. *United States Fidelity & Guaranty Co.,*

48 Mont. 591, Ann. Cas. 1915D, 1036, 140 Pac. 86, held the appellant liable without reference to his motive in having the receiver appointed and without reference to whether there was probable cause for the appointment. Having adopted this theory, the court treated the receiver as having converted the property and instructed the jury accordingly.

The main question for consideration is whether the theory upon which the case was prosecuted is correct.

The receiver was not a trespasser. As the case presented was one in which the appointment of a receiver was authorized by the statute and the proceedings, resulting in the appointment, were regular, the subsequent vacation and nullification of the order did not make the receiver a trespasser *ab initio,* or render the appellant liable for procuring the appointment. Where the order or judgment is reversed or vacated for error, as distinguished from a want of jurisdiction, the party who procured the order or judgment is not liable except where it is shown that he acted maliciously and without probable cause. In other words, judicial action cannot be made the basis of an action in tort. (*Stewart* v. *Sonneborn,* 98 U. S. 187, 25 L. Ed. 116; *Marks* v. *Townsend,* 97 N. Y. 590; *Bridges* v. *McAlister,* 106 Ky. 791, 90 Am. St. Rep. 267, 45 L. R. A. 800, 51 S. W. 603; *Mark* v. *Hyatt,* 135 N. Y. 306, 18 L. R. A. 275, 31 N. E. 1099; *Asevado* v. *Orr,* 100 Cal. 293, 34 Pac. 777; *Hess* v. *German Baking Co.,* 37 Or. 297, 60 Pac. 1011; *Doyle* v. *Sandpoint,* 18 Idaho, 654, Ann. Cas. 1912A, 210, 32 L. R. A. (n. s.) 34, 112 Pac. 204; 2 High on Injunctions, 4th ed., 1593; *Harvey* v. *Gartner,* 136 La. 411, Ann. Cas. 1916D, 900, 67 South. 197, 198; *Saunders* v. *Kemper* (Tex. Civ.), 32 S. W. 585; *Sullivan Timber Co.* v. *Black,* 159 Ala. 570, 48 South. 870.)

The appointment of the receiver, although the order making the appointment was subsequently vacated, conclusively establishes that there was probable cause for the appointment, in the absence of any allegation that the appointment was procured fraudulently or by perjured testimony. (*Short* v. *Spragins,* 104

Ga. 628, 30 S. E. 810; *Crescent City Livestock Co.* v. *Butchers Union etc. Co.,* 120 U. S. 141, 30 L. Ed. 614, 7 Sup. Ct. Rep. 472.)

The complaint does not state a cause of action for conversion. (*Harrington* v. *Stromberg-Mullins Co.,* 29 Mont. 157, 74 Pac. 413; *Rocheleau* v. *Boyle,* 12 Mont. 590, 31 Pac. 533; *Reynolds* v. *Fitzpatrick,* 28 Mont. 170, 72 Pac. 510; *Glass* v. *Basin & Bay State Min. Co.,* 31 Mont. 21, 77 Pac. 302.)

*Messrs. Collins, Campbell & Wood, Mr. T. W. La Fleiche,* and *Mr. E. E. Enterline,* for Respondent, submitted a brief; *Mr. Donald Campbell* argued the cause orally.

MR. JUSTICE COOPER delivered the opinion of the court.

This is an appeal from a judgment in favor of the respondent in the sum of $40,030.74, and an order denying appellant a new trial. The record, consisting of 733 printed pages of pleadings and evidence, essays, with labored circumlocution, to portray the fortunes of a successful stock-raising enterprise, and the proceedings attending its delivery into the hands of a receiver.

In thirty particulars, appellant insists the court erred upon the trial. If the first—to the effect that the case was submitted to the jury upon a theory different from the one upon which it was founded—is to be sustained, the result must be a new trial, for the reason that the issues were framed upon one theory and presented to the jury upon another so different that the end obtained cannot be permitted to stand, because the verdict and judgment do not respond to the issues made by the pleadings.

The gravamen of the complaint is malicious prosecution. Its author—upon the theory that appellant was imbued with a desire to obtain respondent's interest in the business at the lowest possible figure—sets forth a detailed account of the dealings between the parties and the proceedings antedating the starting of the present action. The answer contains general denials, charges a loss of heart upon the part of respondent, and a claim that the preservation of appellant's interests in the property demanded the employment of the drastic measures to which he resorted.

That words may not be spent in vain, we shall content ourselves with a narrative of only the material issues necessary to the disposition of this appeal. Inasmuch as the sustaining of the first assignment will suffice to send the case back for another trial, and none of the problems we are asked to solve will likely embarrass the trial court, counsel or the parties again, we shall waste no effort in the consideration of the remaining questions.

The end sought by the parties to the venture is evidenced by written agreements, in which it is stipulated that the business be started May 4, 1905, and terminated upon eight months' notice by either party to the other; but in no case to end prior to January 1, 1910. Appellant by their provisions obligated himself to furnish capital and funds sufficient and necessary for the purchase of cattle and the lands necessary for the successful conduct of the business. Respondent upon his part agreed, at his own "sole" expense, to run, care for, feed, brand, and prepare for market the cattle and livestock so to be purchased, his share in the proceeds of the operation to be "a number of the young of said cattle and livestock equal in number to one-half the increase" thereof, and the further consideration of "a sum equal to one-half of the net profits from the sale of said steers, cattle and livestock." Both agreed that "all receipts from the sale of ranches, lands, cattle, horses or anything appertaining thereto, should be deposited in a national bank in Sheridan, Wyoming," appellant "to divide the profits and give to" respondent such portion as might be due him under their original agreement; respondent to furnish appellant "about the 1st of January of each year separate statements of the receipts and expenditures of the cattle shipped with all their brands, and of the labor done on the lands and property" of appellant. The initial agreement between them was executed May 4, 1905, the enterprise launched and as operations developed, further understandings affecting the conduct of the business had. Upon the suggestion of respondent, more land and more cattle were purchased by appellant, and, despite hostile machinations of other occupants of the public range, the business thrived, its scope was enlarged, and

the enterprise quickly assumed proportions far beyond the anticipations of either party. Annual shipments of cattle to market were made, normal losses suffered, the property placed in the strange hands of a receiver, and still their herds increased from 200 head in the spring of 1905 to more than 5,000 at the time of the commencement of this action. So far as the record discloses, up to October, 1911, no disquieting incident occurred to mar their business relations, the correspondence passing between them seeming rather to reflect mutual feelings of the most kindly nature, if the felicitations expressed therein are to be taken for what they seem. Soon thereafter, negotiations for settlement and the purchase of respondent's share in the undertaking by appellant failing, at the instigation of appellant all of the property involved in the controversy was sequestered by attachment and receivership proceedings, and the business brought to a stop. For this taking of the property from the care, use and profit of plaintiff, this action was brought, and the verdict and judgment appealed from obtained.

After the case of the plaintiff tending to support the charge of malicious prosecution had closed, the trial court announced that "irrespective of what counsel for the plaintiff may call this lawsuit, the fact remains that the lawsuit itself must be determined from the pleadings themselves. I have in mind—recall very distinctly—at least two different occasions when counsel for the plaintiff referred to this as an action for malicious prosecution. Notwithstanding the statements of counsel, I cannot view it in any other light than that the pleadings themselves and the record must determine what the nature of the action is." Replying thereto, Mr. Collins, of counsel for plaintiff, said: "That was stated in the record, and it is our position absolutely. We are seeking only the actual damages accruing to plaintiff by reason of the appointment of a receiver." Upon the close of all the testimony, the court, at the instance of plaintiff, and over [1] the objection of defendant, advised the jury upon the measure of damages, as follows: "Instruction No. 5. You are instructed that the detriment caused by the wrongful conversion

of personal property is presumed to be: (1) Where the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict, without interest; and (2) a fair compensation for the time and money properly expended in pursuit of the property.''

The court also confined to their consideration and determination the question of conversion, in these words: ''Instruction No. 4. You are instructed that the receivership procured by the defendant, Taintor, having previously been declared to have been wrongful and unlawful, the taking by the receiver of any personal property belonging to St. John, or in which he had any interest, and thereby was entitled to hold in his possession, constituted what the law terms 'a wrongful conversion,' and in this case the defendant, Taintor, must be held liable for such conversion, inasmuch as the institution of such receivership proceedings and the appointment of such receiver was procured by him.''

The instructions thus given by the court were peremptory in their nature, and set prominently before the jury an element not justified by the pleadings, and wholly at war with the hypothesis upon which the action was instituted and the trial all but completed. This was fundamental error, unaffected by statute. (*Schneider* v. *Patton*, 175 Mo. 684, 75 S. W. 155.) ''Pleadings and a distinct issue are essential in every system of jurisprudence, and there can be no orderly administration of justice without them. If a party can allege one cause of action and then recover upon another, his complaint will serve no useful purpose, but rather to ensnare and mislead his adversary.'' (*Southwick* v. *First Nat. Bank*, 84 N. Y. 420; *Romeyn* v. *Sickles*, 108 N. Y. 650, 15 N. E. 698; 2 Thompson on Trials, secs. 2251, 2252.) To uphold a judgment under such conditions would be to assume that the jury took a clearer view of the issues than did the court whose duty it was to aid and guide them in their deliberations.

It is of the very essence of the due administration of justice that judicial proceedings be free from confusion and consistent within themselves, in order that the jury may, under proper advice upon the law, intelligently and fairly consider the evidence,

uninfluenced by the changing attitude of the court, or shifting tactics on the part of counsel. This they were unable to do in the circumstances. The uncertainty of the position of the court and the turning policy of counsel, in our opinion were fatal to a correct determination of the issues involved. (*Cobban Realty Co.* v. *Chicago etc. Ry. Co.*, 52 Mont. 256, 157 Pac. 173.) Indeed, in view of the serious consequences attending the recovery of a judgment so large, it would be unsafe for us to assume that the jury disregarded the mistakes of the court and counsel, and rendered exact justice upon a trial trammeled so with inconsistencies.

The complaint abounds, with almost reproachful prodigality, in iteration and reiteration of charges of malice, fraud and oppression in the levy of attachments and the placing of the property in the hands of a receiver; and that issue was fully developed under the observation of the jury. The complaint is utterly wanting, however, in words equivalent to a charge of conversion, the theory to which the court turned from the main averments charging malice. That it is lacking in the essentials necessary to state a cause of action in conversion is immutably established in this jurisdiction by the decisions of this court in *Harrington* v. *Stromberg-Mullins Co.*, 29 Mont. 157, 74 Pac. 413; *Glass* v. *Basin & Bay State Min. Co.*, 31 Mont. 21, 77 Pac. 302, and other cases.

Coming to the argument before us, counsel leaves us still upon a sea of surmises by this statement in their brief: "The action was not instituted, nor was it prosecuted in the court below, upon the theory of conversion; nor was any recovery had by the respondent in any element of damages awarded upon this theory. The allegations of malice were abandoned at the trial for the reason that the respondent did not seek the recovery of punitive damages." They undertake, nevertheless, to justify the action of the court below, and their own change of front in seeking to recover damages as for a conversion rather than for malice in the institution of attachment and receivership proceedings, upon the authority of *Thornton-Thomas Co.* v. *Bretherton,* 32 Mont. 80, 80 Pac. 10, and *Lyon* v. *United States Fidelity & Guaranty*

*Co.*, 48 Mont. 591, Ann. Cas. 1915D, 1036, 140 Pac. 86.  It is enough to say in this respect that the matters we deem fatal to the integrity of the judgment before us did not arise in either of those two cases.

If the last position assumed by counsel for respondent is the one they would have us accept, it is as much in conflict with the law announced by the court to the jury as is the one taken in the complaint, and leaves us quite as far afield in the realms of speculation as it must have done the jury in their efforts to reach a conclusion upon the evidence in the case.  For the reasons given, the judgment is reversed and a new trial ordered.

MR. CHIEF JUSTICE BRANTLY concurs in the result.

MR. JUSTICE HOLLOWAY concurs.