THE STATE OF MONTANA EX REL. DON TRIPP AND CLARENCE TRIPP, RELATORS, v. THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT IN AND FOR THE COUNTY OF MISSOULA AND THE HON. C. E. COMER, JUDGE THEREOF, RESPONDENTS.

No. 9546.
Submitted May 10, 1956. Decided January 5, 1957.
Rehearing Denied January 7, 1957.
305 Pac. (2d) 1101.

Mr. Chief Justice Adair and Mr. Justice Bottomly dissented.

Messrs. Shallenberger & Paddock, Missoula, for relators.

Mr. Oskar O. Lympus, Missoula, for respondents.

Mr. William F. Shallenberger and Mr. Lumpus argued orally.

MR. JUSTICE ANGSTMAN:

This is an original application for a writ of prohibition or other appropriate writ challenging the jurisdiction of the respondent court to grant a new trial in a certain action.

The facts out of which the controversy arises are these: The Dewey Milling Timber Products, a corporation, hereinafter called the Dewey Company, brought an action against relators in the respondent court to recover the purchase price of lumber alleged to have been sold by it to relators.

The complaint contained only one cause of action but alleged the delivery of lumber to relators on February 10, 1954, at their instance and request of a specified number of board feet of the reasonable and agreed value of $801.93 and on April 29, 1954, lumber of the reasonable and agreed value of $513.30.

The answer consisted of a general denial and affirmative allegations to the effect that relators did have business transactions with the Dewey Company but that relators have paid in full for what lumber was bought by them and that nothing remains due and owing from them.

The cause was tried to the court sitting with a jury. The jury found in favor of relators and against the Dewey Company. Judgment was entered on the verdict on January 27, 1955.

On February 3rd, the Dewey Company served and filed notice of intention to move for a new trial, motion for new trial and affidavits of Jack Foster and Harold Luchau in support of the motion.

The motion for new trial was based upon three grounds: First, accident or surprise which ordinary prudence could not have guarded against; second, newly discovered evidence, and third, insufficiency of the evidence to justify the verdict and that it is against law.

These grounds are paragraphs 3, 4 and 6 of R.C.M. 1947, section 93-5603. The first and second grounds, because of sec-

tion 93-5604, are made only on affidavits, whereas the third ground above stated is made only on the minutes of the court.

After the filing of the motion for new trial and the accompanying affidavits on the part of plaintiff in the action in respondent court, relators on February 10, 1955, obtained an order from respondent court granting them ten days additional time within which to prepare, serve and file counter affidavits.

Thereafter and within the time allowed by order of the court relators filed counter affidavits by Clarence Tripp and Don Tripp, the last of which counter affidavits was filed on February 17, 1955.

Thereafter, and on March 11th, the Dewey Company served on relators a notice calling up the motion for new trial for hearing on March 15th at 9:30 a.m.

The minutes of the court show that the motion was argued by respective counsel on March 15th; that one witness, Lawrence Beavers, testified; that the court heard the testimony and being fully advised ''said motion was submitted and by the court taken under advisement.''

On March 25th the court entered an order reciting that in the affidavit made by Harold Luchau it is stated that William Nicholas, ''brother-in-law of the defendants, made the statement to said Harold Luchau that in the month of January 1955, and before the trial of this action, one of the defendants, Clarence Tripp, admitted to him that he owed the account involved in this action to the Dewey Milling Timber Products, the plaintiff herein. The statement is further made in this affidavit that if he is subpoened on a new trial, the said William Nichols will so testify.

''The Court is of the opinion it should have definitely before it the testimony of the said William Nicholas in this matter before determining this motion * * *''

The court thereupon ordered the issuance of a subpoena to William Nicholas, returnable on March 26, 1955, to relate the conversation referred to in the affidavit. The order recites that

counsel for both parties may be present and ask any relevant questions.

The minute entry of March 26th recites: "Oskar O. Lympus, attorney for the plaintiff and the defendants and their attorney, William F. Shallenberger, came into court, this being the time set for hearing the testimony of William Nicholas. William Nicholas and Clarence Tripp were sworn and testified, and the Court having heard their testimony and being fully advised in the premises, and respective counsel having agreed thereto, the motion of plaintiff for a new trial is deemed finally submitted."

On March 28th, the court granted the motion for new trial and this proceeding followed.

Relators contend that the motion for new trial was not heard within the time required by law and hence that the order granting it was wrongful and without authority of law.

R.C.M. 1947, section 93-5606, requires the hearing on the motion for new trial "within ten days after the notice of motion is filed when the motion is made only on the minutes of the court and within ten days after the filing of affidavits and counter-affidavits when the motion is made on affidavits."

As above noted the last counter affidavit was filed on February 17th and the hearing on the motion for new trial did not take place until March 15th.

However the time for filing counter affidavits had been extended by order of the court and hence we are called upon to determine whether the ten-day period mentioned in section 93-5606, supra, commnced to run at the time of filing the affidavits and counter affidavits or at the expiration of the time allowed for the filing thereof. The latter interpretation we think is the only rational one to be placed upon the statute.

Under R.C.M. 1947, section 93-5605, a party opposing the granting of a new trial may obtain thirty days additional time within which to file counter affidavits and then actually file no counter affidavits and if the time of filing marks the beginning of the ten-day period, it would then be too late to hear

the motion for new trial and the statute would operate as a trap and be subject to abuse preventing the actual hearing of the motion. Such an interpretation will not be adopted if the statute is reasonably susceptible of any other rational construction.

We think what the statute, section 93-5606, supra, means is that the affidavits and counter affidavits are not filed within the meaning of that statute until expiration of the time within which they may be filed.

When then did the time expire within which affidavits or counter affidavits might have been filed? R.C.M. 1947, section 93-5605, provides in part: "If the motion is to be made upon affidavits, the moving party must, within ten days after serving the notice, or within such further time not to exceed thirty days in all, as the court in which an action is pending or a judge thereof may allow, file such affidavits with the clerk, and serve a copy thereof upon the adverse party, who shall have ten days thereafter, or such further time not exceeding thirty days in all, as the court may allow, to serve and file counter affidavits."

Under this section the time to file counter affidavits does not begin to run until expiration of the time for filing affidavits by the moving party. The word "thereafter" refers to the time allowed for filing affidavits and not to the actual time of their filing.

Here no additional time for filing affidavits by the moving party was granted. Its time for filing affidavits expired on February 14th.

Counter affidavits then were required to be filed on or before February 24th.

Ten additional days were granted which extended the time to March 6th.

The motion which was heard on March 15th was in time and the decision thereon was likewise in time under section 93-5606, supra.

580

The next contention is that the court erred in receiving evidence on the hearing on the motion. This point is well taken.

A new trial is purely the creature of statute. The procedure ██ to be followed in moving for a new trial is found in the statutes, and not elsewhere. State ex rel. Sinko v. District Court, 64 Mont. 181, 186, 208 Pac. 952. In Montana the provisions of our Code which countenance a motion for a new trial make no provision for the introduction of oral testimony at the hearing, or for that matter at any other time.

To the contrary by statute the legislature has provided that such a motion be heard upon the minutes of the court, or upon affidavit, or upon both. Otherwise it may not be heard at all. Compare State ex rel. Sinko v. District Court, supra. Accordingly it is wholly immaterial whether the witness Nicholas testified over objection or by consent. In any case the court exceeded its jurisdiction in hearing this testimony at all. But if we consider the evidence taken as equivalent to affidavits, nevertheless they were unauthorized as not coming in time. The time for serving and filing affidavits and counter affidavits had expired.

Likewise if we consider the judge's action in requiring Mr. Nicholas to be subpoenaed as equivalent to an order extending the time for filing affidavits the same was unauthorized because coming too late.

An order extending the time for affidavits or counter affi- [5] ██ in order to be effective must be made before the lapse of the time theretofore granted. Compare Hutchinson v. Burton, 126 Mont. 279, 247 Pac. (2d) 987.

Under the facts here shown it was error to receive the evidence on the hearing of the motion for new trial. Since neither the record of the trial nor the testimony given and heard on the motion for new trial is before us, we are unable to determine in this proceeding whether relators were adversely affcted by the evidence complained of even if the question were properly before us.

It is our view, however, that the court's order granting a new

trial as to all the items involved in the action was made under a misapprehension of the law applicable.

The court's order recites that "the evidence preponderates in favor of the plaintiff, at least as to the lumber alleged to have been sold on or about the 10th day of February 1954, one item $130.15 and the other item $671.78 * * * As to the lumber alleged to have been sold on or about the 15th day of December 1953, for which the plaintiffs claim to be due in the amount of $513.30, there is considerable conflict in the evidence here. * * * If the case only related to the amount claimed in the amount of $513.30, the court would leave the verdict stand in view of this conflicting evidence. However, in view of the evidence offered with reference to the claim of $671.78 and $130.15, totaling $801.83, the court is of the opinion, as stated above, the evidence preponderates in favor of the plaintiff. Of course, the court could not grant a new trial as to one item, but must grant a new trial as to all."

The court erred in granting the new trial as to the item of $513.30. As appears from the court's order that item was sustained by adequate proof. The court exercised no discretion in granting the motion so far as it affects the item of $513.30. As appears from the court's order, it felt obligated to grant the new trial as to all issues though some of them if standing alone would have been approved. The court acted contrary to its judgment from misconception of the law. Contrary to the court's ruling it would have been proper to grant the motion as to items totalling $801.93 and to deny it as to the other item since such issues are distinct and separable.

Prior to 1929 California had a statute identical with our section 93-5603 to the effect that "The former verdict or other decision may be vacated and a new trial granted, on the application of the party aggrieved, for any of the following causes * * *" St. 1919, page 141. The courts of California have consistently ruled that under that statute the court is permitted to grant a motion for new trial as to part of the issues and to deny it as to the rest. San Diego Land & Town Co. v. Neale,

78 Cal. 63, 20 Pac. 372, 3 L.R.A. 83; Tumelty v. Peerless Stages, 96 Cal. App. 530, 274, Pac. 430, and cases therein cited.

So satisfied was California with that rule that in 1929 the legislature amended the statute so as to permit the moving party to apply for a new trial on part of the issues without opening up the whole case. West's Ann. Code Civ. Proc. section 657. The amended statute and its purpose was considered in Quevedo v. Superior Court, 131 Cal. App. 698, 21 Pac. (2d) 998, 1000, where the court said: "The amendment was not necessary to enable a court to grant a new trial upon one issue when a new trial in general had been applied for, as such procedure had long been upheld. It would seem that the only reasonable purpose of the amendment was to meet the suggestion made by the Supreme Court in refusing a hearing in Donnatin v. Union Hardware & Metal Co. [38 Cal. App. 12, 175 Pac. 26, 177 Pac. 845], and to permit a party to avail himself of the right to apply for a new trial upon part of the issues alone without reopening the whole case." The Donnatin case, 38 Cal. App. 8, 12, 175 Pac. 26, 177 Pac. 845, expressed doubt whether a moving party could apply for a new trial of only part of the issues. To remove that doubt the legislature of California amended its statute.

There are some cases sustaining the holding of the trial court but the prevailing rule is as above indicated. 66 C.J.S., New Trial, section 11, 87 et seq.

Relators had a remedy by appeal from an order granting a new trial, R.C.M. 1947, section 93-8003. Were this the only error attempted to be reviewed, we might decline to grant relief in this proceeding but since other questions were properly prsented by this application we thing the record discloses a sufficient exigency to warrant this court in granting full relief and in correcting this error under our supervisory powers within the reasoning of the cases of State ex rel. Crowley v. District Court, 108 Mont. 89, 88 Pac. (2d) 23, 121 A.L.R. 1031; State ex rel. Sinko v. District Court, supra; and State ex rel. Whiteside v. District Court, 24 Mont. 539, 63 Pac. 395.

It has been settled in Montana since State ex rel. Sinko v. District Court, 64 Mont. 181, 208 Pac. 952, was decided by a unanimous court on July 10, 1922, that a writ of supervisory control will issue out of this court to correct a patent injustice which otherwise is without adequate remedy in this court. The admitted facts here at bar can not be effectively distinguished from those of the Sinko case, unless it be that there the case made for the writ of supervisory control was less exigent than that with which we are presently confronted.

State ex rel. Sinko v. District Court has stood for thirty years as the unchallenged law of this state. Upon that precedent the relators are in this proceeding entitled to rely, confident that the precedents announced by this court do not change with its personnel.

In the Whiteside case [24 Mont. 539, 63 Pac. 400] the court, speaking through Mr. Chief Justice Brantly, said of our supervisory power:

"Cases may arise also where some relief could be granted under some one of the other original writs named; but such relief would not be complete and adequate because of some error which could not be corrected by means of the limited functions of the particular writ, while the supervisory power is unlimited in the means at our disposal for its appropriate exercise."

The fact that most of the relief here sought goes to the ques- of the lower court's jurisdiction and hence is reviewable by prohibition, still under the Whiteside and Sinko cases, it is proper in order to grant complete relief for us to use our supervisory powers to reach a point not reviewable by prohibition. We have no hesitancy in holding that the court in granting a new trial so far as item $513.30 is concerned acted under a mistake of law. The supervisory powers of this court are properly invoked to obtain relief from this palpable error.

It should be noted that this court assumed jurisdiction of the case, by issuing the alternative writ, long before the time to appeal from the order granting the new trial had expired.

584

The order granting a new trial is erroneous so far as it affects the item for $513.30. As to it the order is set aside. The order granting the new trial as to the other items was within jurisdiction and in accordance with the law.

It is so ordered.

MR. JUSTICES ANDERSON and DAVIS, concur.

MR. CHIEF JUSTICE ADAIR: (dissenting).

The facts in this case are simple:

On August 17, 1954, Dewey Milling Timber Products, a Montana corporation, plaintiff, commenced civil action No. 20245 in the district court of Missoula County against Don Tripp and Clarence Tripp, defendants, by filing therein a complaint seeking judgment for $1,315.52, and interest, claimed to be due and owing to the plaintiff on *an* account for lumber sold delivered to the defendants at their special instance and request. The suit is an action at law for goods sold and delivered. The complaint states but a single cause of action.

The defendants Tripp appearing by counsel filed a general demurrer to plaintiff's complaint which demurrer the district court, on October 22, 1954, overruled and allowed defendants twenty days within which to answer, but defendants delayed filing their answer until January 24, 1955, being the day the action came regularly on for trial in the district court of Missoula County before the Honorable C. E. Comer, district judge presiding, and a jury.

In their answer the defendants Tripp admitted that they had business transactions with the plaintiff lumber company but alleged that "defendants have paid the plaintiff for all lumber and products so bought from it in full, and that no sums whatsoever are due, owing or unpaid by the defendants, or either of them to the plaintiff."

On the issue of fact so presented by the pleadings the cause was tried to a jury which on January 26, 1955, returned its

verdict in favor of the defendants Don Tripp and Clarence Tripp and against the plaintiff lumber company.

On January 27, 1953, and in strict compliance with the requirements of R.C.M. 1947, section 93-5701, judgment *in conformity to the verdict* was duly entered.

On February 3, 1955, the plaintiff, Dewey Milling Timber Products, deeming itself aggrieved by the verdict rendered and the judgment entered, made timely and proper application to the trial court to vacate same and to grant a new trial of the action.

The ultimate purpose of a motion for a new trial is to prevail upon the trial court to re-examine the issues of fact, to vacate the verdict rendered and to set aside the judgment entered on such verdict. It is the law that when a trial by jury has been had, "judgment must be entered by the clerk, *in conformity to the verdict,* within twenty-four hours after the rendition of the verdict * * *" R.C.M. 1947, section 93-5701. Thus the verdict and the judgment must stand or fall together. One must conform to the other. (Emphasis supplied.)

In making its application for a new trial the plaintiff lumber company strictly and fully met and complied with all the requirements of R.C.M. 1947, sections 93-5601, 93-5603, 93-5604 and 93-5605, by the timely serving and filing of a proper notice of intention to move for a new trial upon the grounds and for the three causes mentioned in subdivisions 3, 4 and 6 of section 93-5603, supra, together with a proper written motion for new trial, accompanied by the timely, adequate and separate supporting affidavits of Harold Luchau and Jack Foster. Thereby did the district court of Missoula County and District Judge C. E. Comer, who presided at the trial of the action, acquire jurisdiction to hear and determine plaintiff's motion for a new trial. The jurisdiction thus acquired continued to and including the date whereon the trial court determined and decided plaintiff's motion for a new trial.

On February 9, 1955, the defendants Tripp, on application made to the trial judge, obtained a court order granting defendants ten days in addition to the ten days allowed by stat-

ute, R.C.M. 1947, section 93-5605, within which to prepare, serve and file counter-affidavits opposing the plaintiff's motion for a new trial, thereby recognizing, conceding and invoking the jurisdiction, power and authority of the trial court and judge to hear and determine plaintiff's motion for a new trial.

On February 14, 1955, the defendants filed the counter-affidavit of the defendant, Clarence Tripp, and three days later they filed the counter-affidavit of the defendant, Don Tripp, all as is authorized by the provisions of R.C.M. 1947, section 93-5605.

Thereafter the trial court heard counsel for the respective parties litigant on plaintiff's motion, following which it made and caused to be entered an order granting a new trial in the action.

The defendants Tripp, deeming themselves aggrieved, R.C.M. 1947, section 93-8002, by the trial court's order granting a new trial, thereupon instituted in the supreme court this original proceeding wherein the defendants Tripp, as relators, seek to have the supreme court *review* and set aside the above court order so made by District Judge Comer and thereby prevent and prohibit a new trial of the action.

The Legislature has prescribed by statute definite and specific regulations and limitations governing the supreme court's right, power and jurisdiction to *review* an order granting a new trial in a civil action. See R.C.M. 1947, sections 93-8001, 93-8002, 93-8003, subd. 2, 93-8004, subds. 3 and 4, 93-8005, 93-8006, 93-8012, 93-8013, 93-8017 and 93-5608.

*Appeal is the Remedy Prescribed by Law.* R.C.M. 1947, section 93-8001, provides: *"How judgments and orders may be reviewed.* A judgment or *order in a civil action,* except when expressly made final by this code, may be reviewed as prescribed in sections 93-7901 to 93-7908 and 93-8001 to 93-8023, *and not otherwise."* (Emphasis supplied.)

Judge Comer's order granting a new trial in civil action No. 20245 is an order in a civil action which may be reviewed by

the supreme court as prescribed in sections 93-8001 to 93-8023 "and not otherwise". Section 93-8001, supra.

"Words and phrases used in the codes or other statutes of Montana are construed according to the context and the approved usage of the language * * * " R.C.M. 1947, section 19-102.

The words *"and not otherwise"* used by the Legislature in enacting section 93-8001, supra, of the Codes are words of prohibition. They forbid review by a method different from that prescribed in the sections of the Code enumerated in section 93-8001, supra.

The word *"otherwise"* is a compound word formed by adding the suffix "wise" to the word "other". Used as an adverb *"otherwise"*, is variously defined in Webster's New International Dictionary as meaning: "In a different manner; in another way, or in other ways, contrarily" and when used as an adjective it means, "Different; other than denoted." Also see 67 C.J.S. page 533, notes 92-99, and Plumas County v. Wheeler, 149 Cal. 758, 87 Pac. 909, 910.

Webster defines the word *"not"* as, "An adverbial participle expressing negation; corresponding to the attributive *no"* while the New Century Dictionary defines the adverb *"not"* as "A word expressing negation, denial, refusal or prohibition."

In State ex rel. Clark v. District Court, 1955, 128 Mont. 526, 278, Pac. (2d) 1000, at pages 1002, 1003, this court said:

"The above statute, section 93-8001, is both prohibitory and jurisdictional. * * *

"The legislature has expressly told the courts of this state that, except when expressly made final by the Code, an 'order in a civil action * * * may be reviewed as prescribed in sections 93-7901 to 93-7908 and 93-8001 to 93-8023, *and not otherwise.'* This statute means precisely what it says."

R.C.M. 1947, section 93-8002, provides: *"Party aggrieved may appeal—names of parties.* A party aggrieved may appeal in the cases prescribed in sections * * * 93-8001 to 93-8023. The

party appealing is known as the appellant, and the adverse party as the respondent."

The Codes specifically provide that, "An appeal may be taken * * * from an order granting a new trial", R.C.M. 1947, section 93-8003, subd. 2, and require that it be taken "within sixty days after the * * * order is made or entered, or filed with the clerk." R.C.M. 1947, section 93-8004, subds. 3 and 4.

R.C.M. 1947, section 93-8005, provides: "*Appeal—how taken.* An appeal is taken by filing with the clerk of the court in which the * * * order appealed from is entered, a notice stating the appeal from the same * * * and serving a similar notice on the adverse party, or his attorney * * * but the appeal is ineffectual for any purpose unless, within five days after the service of the notice of appeal, an undertaking be filed, or a deposit of money be made with the clerk, as herein after provided, or the undertaking be waived by the adverse party in writing."

R.C.M. 1947, section 93-5608, provides: "*Contents of record on appeal.* * * * The record on appeal from an order granting a new trial shall consist of the pleadings and the affidavits used in the hearing, a copy of the motion for a new trial, a copy of the notice of appeal, and *a transcript of the minutes of the court used on the hearing, containing all that part of the minutes of the court and all that part of the official stenographic report of the trial which was used on the hearing of the motion for a new trial or which related to questions raised on the hearing, or such parts thereof as may be agreed upon by the parties as sufficient; such transcript of the minutes shall be prepared, certified by the court as correct, and filed with the clerk of the court, who shall transmit the same to the supreme court as a part of the record on appeal.*" (Emphasis supplied.)

R.C.M. 1947, section 93-8004, subds. 3 and 4, also provide that "the supreme court, or a judge thereof, may stay all proceedings under the order appealed from on such conditions as may seem proper."

The above sections of the Code deal minutely, definitely and specifically with the method and manner expressly provided

by law for obtaining *a review,* by the supreme court, of an order granting a new trial and they prevail over general sections of the Code. Compare In re Stevenson's Estate, 87 Mont. 486, 498, 289 Pac. 566 ,and Durland v. Prickett, 98 Mont. 399, 408, 39 Pac. (2d) 652.

"A special statute controls a general statute relating to the same subject-matter. * * * Where special and general statutes relate to the same subject-matter, the special act will prevail as far as the particular subject-matter comes within its provisions." In re Wilson's Estate, 102 Mont. 178, 195, 56 Pac. (2d) 733, 737, 105 A.L.R. 367.

The only information supplied to this court as to the proceedings had and done in the trial court is such as it be gleaned from the petition of the relators Tripp for the issuance of a writ herein and the verified answer and return made and filed by the respondent trial judge, the Honorable C. E. Comer, to the relators' petition and to the alternative writ of prohibition issued by this court on such petition.

Notwithstanding the specific requirements of R.C.M. 1947, section 93-5608, there are among the papers presented to this court in the instant original proceeding no copy of any notice of appeal, no transcript of the minutes of the court used on the hearing and certified by the trial court or by the clerk thereof and no part of the official stenographic report of the trial consulted and used by Judge Comer while considering and determining plaintiff's motion for new trial and the related questions raised on the hearing of such motion. Furthermore there has been presented to the supreme court none of the testimony or exhibits or other documentary evidence offered or introduced at the trial of the action and none of the testimony given by the witness Laurence Beavers, or by the witness William Nicholas, or by the defendant Clarence Tripp, each of whom is alleged to have testified before the trial judge at some stage of the hearing on plaintiff's motion for a new trial.

In the absence of the properly authenticated transcript and record prescribed and required by section 93-5608, supra, it

was and is utterly impossible for this court to intelligently *review*, consider or determine the alleged errors in admitting or rejecting testimony or other evidence at the hearing on plaintiff's motion for a new trial nor is the supreme court in a position to rule that any party to the litigation has been prejudiced in any of his substantial rights by such alleged admission or rejection of evidence. It may well be that should any evidence have been improperly admitted or rejected, such admission or exclusion amounted to nothing more than harmless error that in no way affected the result.

Had the defendants Tripp followed the procedure and met the requirements prescribed in and required by section 93-5608, supra, this court would then have before it a properly certified record containing the transcript of the minutes of the trial court used on the hearing and setting forth all that part of the stenographic report of the trial used on the hearing of the motion for new trial or relating to questions raised on the hearing which would have enabled the supreme court to here and now intelligently *review*, consider and pass upon the proceedings of which defendants complain including every question attempted to be here presented.

It is the long-established rule in this jurisdiction that we may not place the trial court in error without having before us a properly authenticated record showing prejudicial error.

On appeal, prejudice is never presumed, Olson v. City of Butte, 86 Mont. 240, 250, 283 Pac. 222, 225, 70 A.L.R. 1352; Conway v. Fabian, 108 Mont. 287, 323, 89 Pac. (2d) 1022, and harmless error must be disregarded.

An order determining a motion for new trial upon grounds involving the exercise of judicial discretion may not lawfully be disturbed on review by this court unless it is clearly shown that in passing upon the motion the trial court abused its discretion. Sandeen v. Russell Lumber Co., 45 Mont. 273, at page 282, 122 Pac. 913; Slater v. Bright Hotel Co., 59 Mont. 230, 196 Pac. 152; Gardiner v. Eclipse Grocery Co., 72 Mont. 540, at pages 549, 550, 234 Pac. 490.

The rule that exercise of discretion will not be interfered with in the absence of abuse is particularly applicable where questions of fact are involved, as where insufficiency of the evidence is urged as ground of the motion and it appears that the evidence was conflicting or where the ruling is based upon conflicting evidence contained in affidavits filed in support of or in opposition to the motion. Harrington v. Butte, A. & P. Ry., 36 Mont. 478, 93 Pac. 640; Norton v. Great Northern Ry., 78 Mont. 273, 254 Pac. 165; Bull v. Butte Electric Ry., 69 Mont. 529, 223 Pac. 514.

An order granting a new trial is not a final disposition of the case, and for this reason reviewing courts regard such orders with favor. Best v. Boyer, 98 Mont. 40, 47, 37, Pac. (2d) 331; Northwestern Electric Equipment Co. v. Leighton, 66 Mont. 529, at pages 533, 534, 213 Pac. 1094; Gibson v. Morris State Bank, 49 Mont. 60, at pages 71, 72, 140 Pac. 76.

" 'It has become axiomatic in this jurisdiction, and elsewhere, that, where the evidence is conflicting, the order of the trial court granting or refusing a new trial will not be disturbed on appeal in the absence of a clear showing of abuse of discretion'." Brennan v. Mayo, 100 Mont. 439, at page 447, 50 Pac. (2d) 245, 248, quoting with approval from Norton v. Great Northern Ry., supra.

An appeal could have been taken to this court irrespective of whether the order granting a new trial be valid as made within jurisdiction or void because the trial court had exceeded jurisdiction. In other words in the instant case the remedy by appeal afforded the defendants a plain, speedy and adequate remedy regardless of whether the appealable order complained of be valid or void. State ex rel. Adamson v. District Court, 128 Mont. 538, 279, Pac. (2d) 691, at page 695.

The law providing the remedy and prescribing the procedure to be followed to empower and authorize the supreme court to *review* and determine the correctness of the trial court's order granting a new trial is both specific and clear.

That such law is to be observed and complied with by the

parties litigant, the judge and clerk of the district court and the justices of this court is beyond question.

Only by such observance and compliance are the rights of the plaintiff, as well as those of the defendants, the respondent trial judge and the trial court, assurred and protected.

The defendants have made no attempt whatever to comply with the requirements of sections 93-8001, 93-8002, 93-8003, subd. 2, 93-8004, subds. 3 and 4, 93-8005, 93-8006, 93-8017, 93-5608 of the Revised Codes of 1947. That they have knowingly, deliberately and designedly failed, omitted and refused to comply with such statutory requirements is evidenced by the concluding sentence of the last numbered paragraph of their petition for a writ to issue out of this court wherein they boldly state their ''excuse'' for not complying with the requirements prescribed by the legislature in the above-cited sections of the Code, namely: ''That the defendants are unable to afford the time and expense of an appeal.''

It thus appears on the face of their petition filed in this court that after having calmly and calculatingly weighed the consequences attendant upon a wilful failure on their part to observe or follow the plain mandates of the legislative department of our government, the defendants have set out on a studied plan to circumvent and by-pass the above-cited statutes conferring jurisdiction upon the supreme court to review the trial court's order granting a new trial in a civil action. Defendants have taken no appeal and the time allowed by statute for so doing has long since expired.

*Prohibition.* Instead of availing themselves of the remedy by appeal provided by the legislative mandate by complying with the procedure prescribed in sections 93-8001, 93-8002, 93-8003, 93-8004, 93-8005, 93-8006, 93-8017 and 93-5608, supra, and thus properly invoking the appellate jurisdiction of the supreme court, the defendants have instituted this original proceeding by applying to the supreme court for, and obtaining the issuance and service of, a writ of prohibition directed to and against the District Court of Missoula County and the Honorable C. E.

Comer, a judge thereof, and seeking to have the supreme court thereby and thereon *review* and set aside Judge Comer's order granting a new trial and to prohibit any further proceedings under such order.

The extraordinary writ of prohibition does not issue out of the supreme court as a matter of right. It is reserved for extraordinary and exceptional cases.

It issues only in the exercise of a sound judicial discretion to arrest proceedings of tribunals or officers acting without or in excess of their jurisdiction. R.C.M. 1947, section 93-9201.

"It is preventive, rather than remedial, and cannot take the place of an appeal." State ex rel. Boston & Montana Consol. C. & S. Min. Co. v. Second Judicial District Court, 1899, 22 Mont. 220, at pages 231-232, 56 Pac. 219, at page 223. Also see State ex rel. Myersick v. District Court, 53 Mont, 450, 452, 164 Pac. 546; State ex rel. Hauswirth x. Beadle, 90 Mont. 24, 26, 300 Pac. 197; State ex rel. Sands v. District Court, 95 Mont. 427, 432, 26 Pac. (2d) 970.

R.C.M. 1947, section 93-5606, prescribes the time within which the motion for new trial must be decided. Relators contend that such time had expired before the motion was decided and that the delay in deciding the motion divested the district court and trial judge of jurisdiction to make the order granting a new trial, but the majority ruling in the instant case finds such contention to be lacking in merit and holds that the trial court still had and retained jurisdiction to determine and decide the motion at the time it made its order under which holding a writ of prohibition could not lawfully issue herein. R.C.M. 1947, sections 93-9201 to 93-9204 inclusive.

In the last paragraph of their petition the relators represent to the supreme court: "That the relators have no plain, speedy or adequate remedy in the ordinary course of the law by which to correct the error of the respondent Court and Judge thereof other than by this proceeding." Such representation is neither true in fact nor in law. See State ex rel. Clark & Owens v. District Court, 128 Mont. 526, 529, 278 Pac. (2d) 1000, 1001.

Clearly sections 93-8001, 93-8002, 93-8003, subd. 2, 93-8004, subds. 3 and 4, 93-8005, 93-8006, 93-8017 and 93-5608 of the Codes provide relators with a plain, speedy and adequate remedy by appeal.

Defendants' allegations to, the effect that they "are unable to afford the time and expense of an appeal" cannot excuse nor justify their deliberate and wilful failure to comply with the requirements of sections 93-8001 to 93-8023 and 93-5608 of the Codes nor can such allegations clothe this court with the jurisdiction to here consider and determine claimed errors that, under the law, may be *reviewed* only on a timely and proper appeal. See State ex rel. Clark v. District Court, 128 Mont. 526, at page 529, 278 Pac. (2d) 1000, at page 1001.

From the majority holding that both the hearing on plaintiff's motion for new trial and the trial court's decision and order allowing such motion and granting a new trial were timely under the governing statutes, it follows that the respondent district court and judge proceeded and were proceeding within the jurisdiction granted them by the Constitution and statutes; that the alternative writ of prohibition heretofore issued out of this court and directed against the respondent court and judge was improvidently issued; that the supreme court in this original proceeding has no discretion to exercise and that under the law respondents may not be prohibited from proceeding further in the action as ordered by the trial judge. Clearly, under the facts before this court and the law applicable thereto, the relators were not and they are not entitled to the extraordinary writ of prohibition here. R.C.M. 1947, sections 93-9201 to 93-9204.

In State ex rel. Adamson v. District Court, 1955, 128 Mont. 538, 279 Pac. (2d) 691, 693, this court said:

"If * * * the district court and judge * * * were proceeding * * * within the jurisdiction given them by the Constitution and statutes of this state, they may not be restrained by this writ out of this Court. We have in that case no discretion to exercise."

Counsel for the defendants Tripp drafted and then submitted to this court for issuance the writ which they sought and which they designated "Writ of Prohibition" and this is the writ which was issued and then served upon the respondent district court and the Honorable C. E. Comer, a judge thereof.

The writ commanded the respondents "to desist and refrain, until further order of this Court, from further proceeding in the action of Dewey Milling Timber Products, a corporation, plaintiff vs. Dan Tripp and Clarence Tripp, defendants" and it further ordered that the respondents appear before this court on a day certain and there show cause why the order granting a new trial in said cause should not be vacated and all proceedings relating thereto should not be absolutely and permanently restrained and prohibited. Such is the writ the defendants Tripp asked for, such is the writ they got and such is the writ to which the respondent court and judge made their verified answer and return.

To the petition and writ so served upon the respondents, Judge C. E. Comer made, verified, served and filed a pleading designated by him as "Answer of Respondents Petition for Writ of Prohibition" wherein some allegations of relators' petition were admitted, others denied and wherein respondents also pleaded and set forth much new matter as an affirmative defense thereto.

Thus did the parties litigant, relators as well as respondents, treat and consider the instant action in this court as an original proceeding for a writ of prohibition for which provision is made in section 3 of article VIII of the Constitution of Montana and sections 93-214, 93-9201 to 93-9204 and 93-9105 to 93-9114 of the Revised Codes of Montana of 1947. Such was the theory on which the pleadings of the parties were drafted, the issues joined and the proceedings presented to this court for its consideration.

Of course the relators were not entitled to the alternative writ of prohibition issued nor are they entitled to the peremptory writ sought in the absence of a clear showing that the pro-

ceedings had and done in the District Court of Missoula County before Judge Comer in hearing and determining the plaintiff's motion for new trial were either "without or in excess of the jurisdiction of such tribunal" and district judge, R.C.M. 1947, section 93-9201, and such showing the relators have been and are wholly unable to make for the simple reason that throughout the entire proceedings the district court and the trial judge were acting within jurisdiction. At no time did they act in excess of their jurisdiction.

However subsequent to the final submission of the cause, and without any notice whatever to the respondent, a majority of this court has now abandoned the original theory. This was a proceeding for prohibition wherein the power of this court to review and grant relief is *limited* and regulated by the provisions of sections 93-9201 to 93-9204 and 93-9105 to 93-114 of the Revised Codes of Montana of 1947 and the majority now considers it to be one warranting the issuance of the unlimited and uncontrolled "writ of supervisory control" wherein the majority contend this court's power to grant full relief is wholly unregulated and *unlimited*. I subscribe to no such doctrine and to no such usurpation of power.

The majority here recognizes and concedes that the relators Tripp may not lawfully obtain the review and the relief which they sought through or under the writ of prohibition for which they applied and for this court to now grant such review and relief under an entirely different writ and theory and without any notice or opportunity to defend deprives the respondents of their day in court and is not only unjust but indefensible as well. Under the law and the theory on which the proceedings were initiated and submitted, Judge Comer was entitled to prevail but against the substituted theory of unlimited and uncontrolled power in this court now adopted by the majority the respondent judge is denied any defense that otherwise would be available under the limitations and regulations prescribed by law.

As was said in St. John v. Taintor, 56 Mont. 204, 209, 182 Pac. 129, 131:

"* * * 'Pleadings and a distinct issue are essential in every system of jurisprudence, and there can be no orderly administration of justice without them. If a party can allege one cause of action and then recover upon another, his complaint will serve no useful purpose, but rather to ensnare and mislead his adversary.' Southwick v. First Nat. Bank, 84 N.Y. 420; Romeyn v. Sickles, 108 N.Y. 650, 15 N.E. 698; 2 Thompson on Trials, sections 2251, 2252."

*Unlimited Power.* The majority opinion states that the record discloses a sufficient exigency to warrant this court in granting full relief under its supervisory powers and quotes certain *obiter dictum* from State ex rel. Whiteside v. First Judicial District Court, 24 Mont. 539, 563, 63 Pac. 395, 400, to the effect "the supervisory power is *unlimited* in the means at our disposal for its appropriate exercise." (Emphasis supplied.)

Next the majority opinion states that "under the Whiteside and Sinko cases, it is proper in order to grant complete relief for us to use our supervisory powers to reach a point not reviewable by prohibition." With these statements I can not agree.

At no time has this court been granted any *unlimited* power either appellate, original or supervisory.

The source of the jurisdiction and powers of the supreme court is found in sections 2 and 3 of Article VIII of the Constitution of Montana, Bordeaux v. Bordeaux, 26 Mont. 533, 535, 69 Pac. 103.

*Limitations on Power.* The jurisdiction and powers so granted may be exercised only "under such regulations *and limitations* as may be prescribed by law." Mont. Const., art. VIII, sections 2 and 3. (Emphasis supplied.)

Thus in granting to the supreme court a general overseeing, superintending or supervisory control over the inferior courts of the state, the framers of our Constitution, carefully prescribed the express *limitation* on the exercise by this court of such power to such control as is exercised "under such regulations and lim-

itations as may be prescribed by law." Mont. Const., art. VIII, section 2.

The constitutions of various states have similar provisions and thereunder there is no question as to the exercise by the appellate court of the superintending or overseeing control so granted to them by the employment of such extraordinary writs as a writ of mandamus, the writ of prohibition and the writ of certiorari, all being well recognized extraordinary legal remedies of the common law long employed to keep inferior tribunals within the bounds of their proper jurisdiction.

The concluding phrase of section 2 and article VIII of the Constitution of Montana, namely, *"under such regulations and limitations* as may be prescribed by law" means as prescribed by the Legislature. State ex rel Middlemas v. District Court, 130 Mont. 73, 295 Pac. (2d) 233; Howard v. Cook, 59 Idaho 391, 396, 83 Pac. (2d) 208, 210.

Under the Constitution of this state providing for and creating the supreme court, the only power which such court possesses is such as has been granted to it by the people and the power so granted may be lawfully exercised only *"under such regulations and limitations as may be prescribed by law."* There is nothing in the law of this state that recognizes any such thing as "the inherent power of judges" or "the divine right of kings". These doctrines belonged to an entirely different system of government to correct the evils of which government under a *written* constitution and under *written* laws was designed and adopted.

To ascertain the power granted it by the people the supreme court must look to the written Constitution of this state for a written grant of power. Finding no such written grant the supreme court may not then resort to nor reach out for any such indefinite, uncertain, unrecognized, uncontrolled and unwritten authority or power as is concealed in such doctrines as "the inherent power of judges" or "the divine right of kings" to justify any attempt by the court to exercise powers not granted and therefore not possessed.

A court has no power to do anything which is not authorized by law.

The constitutional judicial department is an American invention. It was devised to see that government goes no further than its authority extends. The judicial department must not exceed the authority granted it by the people. Its decisions must be the voice of law and not the echo of partisan faction.

"It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon. Their motto should be *obsta principiis*." Boyd v. United States, 116 U.S. 616, 635, 6 S. Ct. 524, 535, 29 L. Ed. 746. *Obsta principiis*, resist the first beginnings. Do not let the tyranny of government get a start. "In questions of power, then," wrote Thomas Jefferson, "let no more be heard of confidence in man, but bind him down from mischief by chains of the Constitution."

The Legislature has *"prescribed by law"* definite and specific regulations and *limitations* on the supreme court's authority, right, power and jurisdiction to *review* an order granting a new trial in a civil action. See R.C.M. 1947, sections 93-8001, 93-8002, 93-8003, subd. 2, 93-8004, subds. 3 and 4, 93-8005, 93-8006, 93-8012, 93-8013, 93-8017 and 93-5608. The legislative mandates contained in the above statutes are controlling here and they should be obeyed.

The phrase *"prescribed by law"* when used in the Constitution, generally means prescribed or provided by statutes. Lawson v. Kanawha County Court, 80 W. Va. 612, 92 S.E. 786; Brinckerhoff v. Bostwick, 99 N.Y. 185, 1 N.E. 663, 665; People v. Santa Clara Lumber Co., 55 Misc. 507, 106 N.Y.S. 624, 626; Public Utilities Comm. v. East Providence Water Co., R.I., 137 A. 387; Gilliam v. California Employment tSability Comm., 130 Cay App. (2d) 102, 278 Pac. (2d) 528, 536.

While the Constitution of Montana provides that the supreme court "shall have power in its discretion to issue and to hear and determine writs of habeas corpus, mandamus, quo-warranto, certiorari, prohibition and injunction, *and such other*

*original and remedial writs as may be necessary or proper to the complete exercise of its appellate jurisdiction,"* Mont. Const. art. VIII, section 3, it will be observed that all of the enumerated writs are recognized common law writs and, under the well-known *ejusdem generis* rule the more general above-italicized concluding phrase which immediately follows the specific enumeration of well recognized common law writs is to be construed and held to refer to such other original and remedial extraordinary writs as were known to and recognized by the common law. But it most certainly was not the intent of the framers of the Constitution to empower or authorize the supreme court to exercise or usurp the powers and functions of the legislature by designing, inventing or evolving any wholly new device or procedure for exercising the "supervisory power" granted, such as the unregulated, unlimited and uncontrolled "writ of supervisory control" of which our founding fathers had never heard and which had never been recognized or used at common law or in our territorial courts and which to this day has never been recognized or sanctioned by the legislative department of our state government and which is purely the creature of the inventive genius of the court without being prescribed or authorized by either the Codes, the statutes or any other written law of this state.

In my opinion, the supreme court not only is lacking in the power and authority but it is definitely prohibited, R.C.M. 1947, section 93-8001, from resorting to such unlimited and uncontrolled so-called "writ of supervisory control" to *review* the trial court's order or to determine the claimed errors alleged to have been committed by the respondent trial judge.

In State ex rel. Reid v. District Court of Second Judicial District, 1952, original proceedings Nos. 9153, 9154 and 9161, 126 Mont. 489, 508, 509, 255 Pac. (2d) 693, 703, this court said:

"Supervisory control, invoking the original jurisdiction of the supreme court, is not a substitute for an appeal provided

by statute. State ex rel. Meyer v. District Court, 102 Mont. 222, at page 226, 57 Pac. (2d) 778, at page 780.

"Original proceedings seeking supervisory control may not be employed to by-pass the statutes allowing and requiring timely appeals to the supreme court. Where as here the appeal allowed by statute furnishes an adequate remedy, such remedy is exclusive and furnishes the only lawful means of reviewing in the supreme court the judgment and order determining the inheritance tax. The review in the supreme court must be had on timely and proper appeal as is prescribed in the statutes governing appeals 'and not otherwise.' Sec. 9729, R.C.M. 1935 [now R.C.M. 1947, section 93-8001]."

The Montana statute, R.C.M. 1947, section 93-5603, so far as is here pertinent, provides: *"When a new trial may be granted.* The former verdict or other decision may be vacated and a new trial granted, on the application of the party aggrieved, for any of the following causes, materially affecting the substantial rights of such party: * * *"

The above has been the law of this jurisdiction at all times since the year 1864. See Section 169 of the Bannack Statutes, Laws of Montana, First Session, 1864.

The above statute, section 93-5603, does not permit the piecemeal granting of a motion for a new trial. The motion must be granted in whole or not at all.

The California statute, section 657 of the California Code of Civil Procedure, provides: "The verdict may be vacated and any other decision may be modified or vacated *in whole or in part,* and a new or further trial granted *on all or part of the issues,* on the application of the party aggrieved, for any of the following causes, materially affecting the substantial rights of such party: * * *" (Emphasis supplied.)

It will be noted that the Montana statute does not contain the phrases *"in whole or in part"* or *"on all or part of the issues"* and the courts, by express statute R.C.M. 1947, section 93-401-15, are told in construing a statute their office is "not

to insert what has been omitted, or to omit what has been inserted.''

The majority opinion cites and relies upon the case of Quevedo v. Superior Court, 131 Cal. App. 698, 21 Pac. (2d) 998, but in the much more recent case of Flores v. Brown, Cal. App. 1951, 233 Pac. (2d) 168, at page 182, the California court said: ''While not mentioning the Quevedo case, there are several cases later in time directly contrary to it.'' See also Keogh v. Maulding, 52 Cal. App. (2d) 17, 125 Pac. (2d) 858; Bencich v. Market St. Ry. Co., 20 Cal. App. (2d) 518, 67 Pac. (2d) 398; and Wallace v. Miller, 26 Cal. App. (2d) 55, 78 Pac. (2d) 745.

It was the common law conception of a verdict that it was single and indivisible. Barnett v. Loud, 243 Mass. 510, 137 N.E. 740, 742.

R.C.M. 1947, section 12-103, provides: ''The common law of England, so far as it is not repugnant to or inconsistent with the constitution of the United States, or the constitution or laws of this state, or of the codes, is the rule of decision in all the courts of this state.''

Keller v. Gartin, 220 Iowa 78, 261 N.W. 776, holds that the general rule is that a new trial if granted at all should be awarded for the entire case. To like effect see: City of Buffalo v. Delaware, L. & W. R. Co., 176 N.Y. 308, 68 N.E. 587; Arnold v. Arnold, 230 App. Div. 79, 243 N.Y.S. 344, 346; Schofield v. Schofield, 124 Pa. Super. 469, 189, A. 572, 577; Massolo v. Elm Coal & Oil Corp., 260 App. Div. 927, 23 N.Y.S. (2d) 33, 34; Quillet v. Johnson, Ohio Com. Pl. 71 N.E. (2d) 488; Markota v. East Ohio Gas Co., 154 Ohio St. 546, 97 N.E. 13, 15.

The majority opinion cites and relies upon State ex rel. Whiteside v. First Judicial District Court, 24 Mont. 539, 63 Pac. 395; State ex rel. Sinko v. District Court, 64 Mont. 181, 186, 208 Pac. 952; and State ex rel. Crowley v. District Court, 108 Mont. 89, 88 Pac. (2d) 23, 121 A.L.R. 1031, in each and all of which the supreme court either completely overlooked

or deliberately ignored the plain provisions of Montana's controlling statute, section 93-8001, supra, which provides that this appealable order so made in a civil action "may be reviewed as prescribed in sections * * * 93-8001 to 93-8023, and not otherwise." As between this valid statute and the above-cited decisions relied upon by the majority which attempt to sanction a review "*otherwise*" the statute, section 93-8001, supra, must prevail.

For the above reasons I dissent to the majority opinion herein.

MR. JUSTICE BOTTOMLY: (dissenting).

On reconsidering the legal questions presented in this case, I dissent from the majority opinion as now written for the following reasons:

This is an original proceeding upon relators' application for a writ of prohibition, challenging the jurisdiction of the respondent court in granting its order for a new trial.

This court issued its alternative writ of prohibition. Return therein was made and oral arguments heard and briefs submitted. The facts and circumstances presented, in my opinion, conclusively show that the district court in granting its order for a new trial acted without and in excess of its jurisdiction.

The facts, circumstances and the law applicable thereto disclose the right of relators to full legal relief under their application for writ of prohibition. R.C.M. 1947, section 93-9201, provides: "The writ of prohibition is the counterpart of the writ of mandate. It arrests the proceedings of any tribunal, corporation, board, or person, whether exercising functions judicial or ministerial, when such proceedings are *without or in excess of the jurisdiction of such tribunal, corporation, board, or person.*" (Emphasis supplied.)

This court under our Constitution, Art. VIII, section 3 and our statutes enacted by our legislature, R.C.M. 1947, sections 93-9201—93-9204, may grant the authorized and legal relief herein applied for. That prohibition is the only legal writ that

may be issued in this particular kind of a case under the facts. herein cannot be doubted. It is the office of the writ of prohibition in such a case, where the district court as here acted without or in excess of jurisdiction, *to give complete relief.* See State ex rel. Examining & Trial Board v. Jackson, 58 Mont. 90, 190 Pac. 295; State ex rel. King v. District Court, 107 Mont. 476, 86 Pac. (2d) 755; State ex rel. Stewart v. District Court, 103 Mont. 487, 63 Pac. (2d) 141. In any event, one of the constitutional and statutory writs or appeal was available here.

The laws of this state are found only in our Constitution and statutes, and they are the only source of our authority and jurisdiction in such proceedings. The only original writs or applications to this court for relief must, in law, come under those prescribed by our statutes and our Constitution and the common law where not superseded by our Constitution and not otherwise.

It should be noted that while other Code provisions, like R.C.M. 1947, section 93-9002, provide that the existence of a remedy by appeal will defeat the right to relief by writ of review, there is no such provision found in the section applicable to the writ of prohibition and it may be issued in all such cases where there is not a plain, speedy and adequate remedy in the ordinary course of law. *But even the remedy by appeal does not defeat the right to relief by prohibition in such cases.* Compare State ex rel. Marshall v. District Court, 50 Mont. 289, 146 Pac. 743; State ex rel. Examining & Trial Board v. Jackson, supra; State ex rel. King v. District Court, supra.

We are authorized by law to issue writs of prohibition in our discretion for whatever purpose they are suitable, without limitation or qualification, where they go to courts on inquiry into questions of jurisdiction. See State ex rel. Whiteside v. First Judicial District Court, 24 Mont. 539, 562, 63 Pac. 395.

However, the court-called writ of supervisory control, as used in the majority opinion herein, is unauthorized by our Constitution, our statutes, and is unknown to the common law

and the law of this state. It is simply this court's created device and fiction.

In the Whiteside case, supra, as I read it, the only question there before the court for determination was whether this court in that case was correct in issuing its writ of certiorari to review the record of the lower court and to annul the district court's order. This court therein simply held that this court had no statutory power to review the order under such writ for the reason that the district court had acted within its appropriate jurisdiction, and therefore vacated the writ and dismissed the proceedings. That was all that was before the court and was all that was necessary and pertinent to that decision. The court did however proceed to review the different statutory writs in a lengthy dissertation, commenting in general terms upon and proposing a novation, to be called a writ of supervisory control, which might be used in certain cases. However, all such comment was not relevant to, and did not pertain to, nor was it germane to the question before the court and its decision, and therefore such comment was entirely *obiter dictum*. If such court-invented writ of supervisory control can be issued in the instant case, upon the application of this relator for a writ of prohibition wherein relator relied upon the authorities of former opinions of this court applicable to writs of prohibition and in no wise in his petition relying upon precedents where the writ of supervisory control was used, then I see no reason why such writ of supervisory control should not lie to correct each and every mistake and error of district courts within or without and in excess of jurisdiction and supplant the use of any of the statutory writs and the statutory appeals. Thus this practice will continue to circumvent the required statutory procedures, rendering them useless and this court will be constantly employed in the hearing and determination of such unauthorized applications. Compare State ex rel. Shores v. District Court, 27 Mont. 349, 354, 71 Pac. 159.

This court, from the *obiter dictum* pronounced in the Whiteside Case, supra, has on several occasions followed that dictum

as precedent. Such precedent culminates in the case of State ex rel. Sinko v. District Court, 64 Mont. 181, 208 Pac. 952. In that case the facts and circumstances are similar to those in the King Case, supra. The legal question was the same; in both cases the presiding judge had made and entered an order granting a new trial after the time allowed by law. However, in the Sinko Case, a so-called writ of supervisory control was issued and in the King Case a statutory writ of prohibition was granted. In both cases the respective writs were used to grant full relief. The proceedings in the King Case were founded on constitutional and statutory authority, while in the Sinko Case there was no law upon which the proceeding was based, only the inclination of the men, then members of the court. In other words court-made law.

This so-called writ of supervisory control is an easy way to handle such matters. *It is unfettered by any control of law,* only the conscience of the court is the guide. It has often been stated that *ours is a government of law not of men.* What is the "law of the land" in Montana? As I understand the only law of this state is contained in our Constitution, our statutes and the Constitution and laws of the United States of America. See R.C.M. 1947, sections 12-101, 12-102, 93-1001-9. Nowhere in our *law* do I find the will of the supreme power of the state, the people, expressing one word about a writ of supervisory control. There is just no such proceeding authorized under law.

As I view the matter on the one hand, the court takes the law as given to it by the people through their constitutions and statutory laws, all of which are plainly written so that every attorney may know the law and the authorized legal processes which may be used in aid of and to protect the civil rights of his client; on the other hand, we have only the fiction of a court-made rule without any foundation of written law to support it.

On the question of *stare decisis,* I take my stand with the Supreme Court of the United States and Mr. Justice Brandeis, as expressed in the opinion of that court in Erie Railroad Co.

v. Tompkins, 304 U. S. 64, 58 S. Ct. 817, 823, 82 L. Ed. 1188, 114 A.L.R. 1487, wherein the question was whether the oft-challenged, court-made law, rule and doctrine of the Swift v. Tyson Case, 16 Pet. 1, 10 L. Ed. 865, decided in 1842, should be disapproved after almost a century. Justice Brandeis quoted Mr. Justice Holmes in Black & White Taxicab Co. v. Brown & Yellow Taxicab Co., 276 U.S. 518, 533, 48 S. Ct. 404, 72 L. Ed. 681, 57 A.L.R. 426: " '* * * But *law* in the sense *in which courts speak of it today does not exist without some* definite authority behind it.' * * * Thus the doctrine of Swift v. Tyson is, as Mr. Justice Holmes said, '*an unconstitutional assumption of powers by the Courts of the United States which no lapse of time or respectable array of opinion should make us hesitate to correct*'." (Emphasis supplied.)

Justice Brandies also quoted Mr. Justice Field in an early case, Baltimore & O. R. v. Baugh, 149 U.S. 368, 13 S. Ct. 914, 37 L. Ed. 772, in part as follows: "And I confess that, moved and governed by the authority of the *great names of those judges,* I have, myself, in many instances, unhesitatingly and confidently, but I think now erroneously, repeated the same doctrine. *But, notwithstanding the great names which may be cited in favor of the doctrine, and notwithstanding the frequency with which the doctrine has been reiterated,* there stands, as a perpetual protest against its repetition, the constitution of the United States * * *" (Emphasis supplied.)

All of the foregoing is applicable here in the instant case. Our Constitution and statutes are a perpetual protest against the repetition of the issuing of the unauthorized so-called writ of supervisory control, under the fiction or invention, that this court has such power and authority to issue same. Section 2 of Article VIII, Montana Constitution, provides as far as pertinent here, "*The supreme court * * * shall have * * * a general supervisory control over all inferior courts, under such regulations and limitations as may be prescribed by law.*" (Emphasis supplied.) I am unable to find any other constitutional provision relative to this court's *supervisory power* over inferior

608

courts, except the constitutional and statutory writs and processes authorized by law. There is no constitutional provision authorizing this court to issue, nor is there any mention of a so-called writ of supervisory control in our Constitution. Nor do I find any legislative enactment or statute dealing with, or mentioning such a process. There simply isn't any such action or proceeding known to our law.

Of course, the above mentioned clause of section 2 of Article VIII, is not self-executing. Legislation must be had to enable this court to lawfully and effectively exercise such jurisdiction and authority. When the legislature has failed or refused to enact a law or laws of regulations and limitations at all, the authority therein simply lies dormant. It is an effective means of prohibiting to the court such authority. The provisions of the Constitution are prohibitory and mandatory. Article III, section 29. It must be conceded that there is no power which can coerce the legislature into enacting a law or laws prescribing the regulations and limitations necessary to confer such authority and jurisdiction on this court. In the absence of legislation thereon, making the prospective grant of authority effective, it is of no use whatever. Therefore, being unauthorized by law, when this court assumes to exercise such authority in authorizing or issuing the so-called writ of supervisory control, such action is unlawful. If this lack of legislation is a hindrance on the authority of the court, or on litigation, and a remedy is needed, the people through their legislature may *alone* provide such remedial legislation. This court may not so legislate. Compare State ex rel. Crumb v. City of Helena, 34 Mont. 67, 85 Pac. 744.

One has only to examine the decisions of this court wherein the court has granted or refused to grant the so-called writ of supervisory control to observe the utter confusion and uncertainty connected therewith. The reason for such a condition is, of course, the fact that there is no law, either substantive or adjective, upon which any lawful proceeding must be based. The result is then, when such a process is issued, it is without

restraint of and not in accordance with law and is an arbitrary assumption of power and authority. From this condition it is no wonder that many practicing lawyers hesitate to advise a client in regard to the use of a writ, whether a lawful statutory writ or one not authorized by law, and they rightly echo the jibe about the ''glorious uncertainties of the law.''

It may be said that the policy of *stare decisis* is a wise policy in those cases where the *law* has prescribed the *remedy* and the *process* and these have been interpreted, applied and established over the years by many decisions. However, it is an entirely different matter where a mere fiction of the court, or court-made law, has been used to supplant the Constitution and the statutes. In such a case, like we have here, there should be no hesitation by the court to overrule so-called precedent which has been established on fiction and square future litigants with the *law*. As was said in Baker v. Lorillard, 4 N.Y. 257, 261, ''It [the court] may, and undoubtedly ought, when satisfied that either itself or its predecessor, has fallen into a mistake, to overrule its own error. I go further, and hold it to be the duty of every judge and every court to examine its own decisions without fear, and to revise them without reluctance.''

Every court has at times been in error in applying our *law* to facts, using prior decisions to fortify the opinion, each department of government has so erred, but this court can extricate itself from such error when a subsequent proper case is presented. Where, as here, there is no *law* for the precedent, it becomes the duty in my opinion to proclaim to future litigants that such unlawful proceeding shall not be utilized, and that this court will abide in the future with ''the law of the land.'' For the reasons stated I would treat all that is said in the Whiteside Case on the use of the so-called writ of supervisory control as *obiter dictum*, and I would overrule the Sinko case, supra, and all other decisions of this court wherein the unauthorized so-called writ of supervisory control was authorized by this court. In the instant case, the writ of prohibition as applied for by relators and granted by this court, being statutory and con-

stitutional, should be affirmed and full relief granted relator thereunder. Otherwise the stinging rebuke of the stanza of the Poet William Cowper's Tirocinium, 11-521-256, would be applicable:

"The slaves of custom and established mode,
With packhorse constancy we keep the road,
Crooked or straight, through quags and thorny dells,
True to the jingling of our leader's bells.
So follow foolish precedents, and wink
With both our eyes, is easier than to think."